## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| SAMANTHA LOPEZ and<br>KELLEY RODAS, | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Case No.   3:13-cv-77-TCB |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| ASSURANCE QUALITY GROUP, | ) | |
| INC., | ) | |
| BRENT SCHWARTZ (individually), | ) | |
| STEPHEN WHETSTONE | ) | |
| (individually), | ) | |
| EXPRESS EMPLOYMENT SERVICES, | | |
| L.P., and MOBIS GEORGIA, LLC. | | |
| | | |
| **Defendants.** | | |

## COMPLAINT

**COMES NOW** Plaintiffs **SAMANTHA LOPEZ AND KELLEY RODAS** and files this Complaint against **ASSURANCE QUALITY GROUP, INC**. (hereinafter "Assurance"), **BRENT SCHWARTZ** (individually), **STEPHEN WHETSTONE** (individually), **EXPRESS EMPLOYMENT SERVICES, L.P.** (hereinafter "Express"), and **MOBIS GEORGIA, LLC.** (hereinafter "Mobis Georgia), and shows the Court as follows:

## PARTIES

1.  Plaintiff, Samantha Lopez (Female), is an individual residing in LaGrange

    Georgia,   which is Troup County.  At all relevant times to this complaint,

    Plaintiff Lopez was an employee of both Defendant Express and Defendant

    Assurance jointly.  Her location of employment was 7001 Kia Parkway,

West Point, Georgia 31833 was making her an employee as defined by Title VII of the Civil Rights Act and 42 U.S.C. §1981.

2. Plaintiff, Kelley Rodas (Female), is an individual residing in LaGrange, Georgia, which is Troup County. At all relevant times to this complaint, Plaintiff Rodas was an employee of Defendant Assurance Quality Group, Inc. Her location of employment was also 7001 Kia Parkway, West Point, Georgia 31833:, making her an employee as defined by Title VII of the Civil Rights Act and 42 U.S.C. §1981.

3. Both plaintiffs rights under the following statutes have been violated: the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., for employment discrimination and retaliation; the Civil Rights Act of 1866, 42 U.S.C. § 1981, for discrimination and retaliation, 24 U.S.C. §1983 and the Family and Medical Leave Act pursuant to 29 U.S.C. §2617 (29 CFR Part 825.000 et seq).

4. On information and belief, Assurance Quality Group, Inc, is an Alabama corporation organized and existing under the laws of the state of Alabama. Its principal place of business may be served at: Stephen Whetstone, 1761 Commons North Loop, Suite 1100, Tuscaloosa, AL 35406.

5. On information and belief, Individual Defendant Brent Schwartz (Male) is a resident of Alabama. He was the Operations Manager for Defendant

Assurance Quality Group, Inc. for the relevant time period for this action. Upon information and belief he may be served with process at: 6213 Woodcrest Dr. Tuscaloosa, AL 35406.

6. On information and belief, Individual Defendant Stephen Whetstone(Male) is a resident of Alabama. He was the President of Defendant Assurance Quality Group, Inc. for the relevant time period for this action. Upon information and belief he may be served with process at: 3946 Gaineswood Ln, Tuscaloosa, AL 35406.

7. On information and belief, Defendant Express Services Employment, L.P. is a Georgia corporation organized and existing under the laws of the state of Georgia. Its principal place of business may be served at: C T Corporation System, 1201 Peachtree ST, N.E., Atlanta, Georgia 30361.

8. On information and belief, Defendant Mobis Georgia is a Georgia corporation organized and existing under the law of the state of Georgia. Its principle place of business may be served at: 7001 Kia Parkway, West Point, Georgia 31833.

## DEFENDANTS ASSURANCE QUALITY GROUP, INC. AND EXPRESS EMPLOYMENT, L.P. ARE JOINT EMPLOYERS

9. Upon information and belief, Defendant Express Employment, L.P. is the employment placement agency that employed both Plaintiff Lopez with

3

Defendant Assurance Quality Group, Inc. in relation to the allegations included in this complaint.

10.  At all relevant times mentioned in this Complaint, Defendant Assurance Quality Group, Inc. was the direct client of Defendant Express Employment, L.P.

11.  Plaintiff Lopez was operating as a full-time employee of Defendant Express Employment L.P. and working under the control of Defendant Assurance Quality Group, Inc.

12.  Both defendants are highly integrated with respect to ownership and operations and are properly considered a single and/or joint employer as it relates to Plaintiff  Lopez for the relevant time period mentioned in this Complaint.

13.  For example, Defendant Express Employment, L.P. provides human resource management and compliance guidance directly to Plaintiff Lopez. Plaintiff Lopez's contractual obligations clearly state that she is an employee of Express Employment, L.P.  However, Plaintiff Lopez was working at Defendant Assurance's physical work facility.

14.  Plaintiff Lopez reported her hours of work to both defendants, but received her paycheck from Defendant Express.

15.  Defendant Assurance Quality Group, Inc. managed and controlled Plaintiff

Lopez's assignments and provided all tools and equipment needed to

complete her tasks.

16.  Overall, both defendants had a close interrelation as well as centralized

control over Plaintiff Lopez.  There was common management and financial

control.  Both corporate defendants are a single employer and/or joint

employer, such that they may be held jointly liable for Plaintiff Lopez's

claims herein.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the Family and Medical Leave Act pursuant

to 29 U.S.C. §2617 (29 CFR Part 825.000 et seq), Title VII of the Civil

Rights Act of 1964 as amended for employment discrimination based on

race and retaliation (42 U.S.C. §2000e(5).  Jurisdiction is also based on 28

U.S.C. Sections 1331, 1343, 1345, 1367 and 42 U.S.C. Sections 1981 et seq.

18.  This action is also brought pursuant to:  Pregnancy Discrimination Act of

1978, codified at 42 U.S.C. § 2000e(k), as amended, Civil Rights Act of

1964, and the Civil Rights Act of 1991, for employment discrimination

based on pregnancy.

19.   Personal jurisdiction  and venue are appropriate pursuant to 28 U.S.C. §

1391(b), (c), and (d) since the Defendants are residents of, have an agent or

agents, and/or transact their affairs in LaGrange, Troup County, Georgia,

and the unlawful conduct complained of occurred in this District.

20. This Court has personal jurisdiction over all Defendants.  On information

and belief, the defendants have engaged in both substantial isolated and non-

isolated activity within this state.  Defendants have and are transacting

business within this state.  Defendants have used real property situated

within this state.  Lastly, Defendants have engaged in a persistent course of

conduct, or derives substantial revenue from goods used or consumed in this

state.  Defendants have recruited Plaintiff while in this jurisdiction.

Therefore exercise of jurisdiction over the defendants will not offend

traditional notions of fair play and substantial justice.  Such an exercise is

consistent with the Georgia long-arm statute, Ga. Code Ann. §9-10-91.

21. Venue is proper in this district pursuant to 28 U.S.C. § § 391(b), (c), and (d)

in that Defendants ships into, offers to sell in or is continuously selling

products into this forum state. The alleged acts and injury occurred in the

jurisdiction of Georgia.  Therefore, venue is proper in this Court.

## FACTS

22. Defendant Express is an employment placement agency that placed both Plaintiff Rodas and Plaintiff Lopez on a temporary assignment as Inspectors with Defendant Assurance.

23. On or around early January 2011, Defendant Express placed Plaintiff Rodas on a temporary assignment with Assurance Quality Group.

24. On or around January 30, 2012, Defendant Express placed Plaintiff Lopez on a temporary assignment with Defendant Assurance. During Plaintiff Lopez's assignment with Defendant Assurance, she remained an employee of Defendant Express.

25. However, directly due to Plaintiff Rodas' performance, on or around March 2012, Defendant Assurance hired Plaintiff Rodas to become a permanent employee of Assurance Quality Group, Inc.

26. Defendant Brent Schwartz (Male), the Operations Manager for Defendant Assurance Quality Group, , was Plaintiff Rodas' first-line manager.

27. Defendant Assurance made Plaintiff Rodas the supervisor over Plaintiff Lopez.

28. Plaintiff Lopez was in her second trimester of pregnancy when she started her assignment with Defendant Assurance. Plaintiff Lopez started showing

physical signs when she was at her sixth month of pregnancy, which was around April 2012.

29.  In May 2012, Plaintiff Rodas informed Defendant Schwartz and Defendant Stephen Whetstone, President of Assurance, that she was with child and that her physician instructed her to work light duty due to her pregnancy.

30.  Even though Defendants were instructed to accommodate Plaintiff Rodas due to her pregnancy by assigning light duty, Defendant Assurance instead required Plaintiff Rodas to pull racks, unload and load parts, and climb on dangerous conditions to reach car parts.

31.  Initially, Defendants Schwartz and Whetstone were excited for Plaintiff Rodas' pregnancy, but eventually changed toward both plaintiffs at the instruction of Defendant KD Kim who was the Quality Manager of Mobis of Georgia (Male).

32. Defendant Kim instructed Defendant Schwartz to get rid of Plaintiffs because the company "did not want to hire any more pregnant women because it's a liability."

33.  After Defendants learned of both pregnancies, Defendant Kim consistently scrutinized the plaintiff's work performance.

34. In mid-June 2012, Defendant Whetstone contacted Plaintiff Rodas by phone and instructed Plaintiff to terminate Plaintiff Lopez and to tell Defendant

Express that "her assignment ended."  Defendant Whetstone further

instructed Plaintiff to just report to Defendant Express that there was no

more work for Plaintiff Lopez.

35.  During this same phone call, Defendant Whetstone also stated that he was

soon thereafter forcing Plaintiff Lopez on medical leave pursuant to the

Family and Medical Leave Act due to her pregnancy.

36.  Plaintiff had at least another one month and a half before having to exercise

her federal leave rights under FMLA and wanted to work up until that point,

but Defendant Assurance stated that Plaintiff Lopez would be forced to take

FMLA leave.

37. Plaintiff Rodas was fully aware that upon receiving this instruction, there

was plenty more work that could have been assigned to Plaintiff Lopez.

38.  Unbeknownst to Defendant Whetstone, Plaintiff Lopez overheard the entire

conversation.

39.  Defendants terminated Plaintiff Lopez's assignment on June 18, 2012.

40.  On or around June 2012, Plaintiff Rodas questioned whether Defendant

Kim was now finding fault with her performance because she was pregnant

and reminded him that she never had performance issues prior to announcing

her pregnancy.  Defendant Kim yelled at Plaintiff Rodas for making that

statement and threatened to call security if she did not leave the premises.

41. The very next day, Defendants sequestered Plaintiff to a vacant warehouse with no air condition or running water and the restrooms were inoperable.

42. While still requiring Plaintiff Rodas to work in the warehouse, Defendant Whetstone told Plaintiff Rodas that she did not have to worry about her position and that the company would "take care of her." He also promised her that he would try to get an advance on her bonus while she was on leave, but that never happened.

43. Plaintiff Rodas started her leave on July 19, 2012. The same day she was forced to take FMLA leave, Defendant Whetstone told Plaintiff Rodas that she didn't have to worry about her job and the it would still be there for her upon her return.

44. On August 15, 2012, Plaintiff Rodas gave birth to her son. Approximately three days later, she contacted Defendant Whetstone by phone to inform him that she was ready to return to work. Defendant Whetstone stated that he *may* have to place her on "second shift", but would call her back to confirm.

45. Two weeks later, Plaintiff Rodas had still not heard from Mr. Whetstone. During the period, she attempted to call him and left voicemails, but did Mr. Whetstone did not return her call.

46. In attempt to make contact with Mr. Whetstone, Plaintiff Rodas called him from her an unfamiliar number and he finally picked up the call.

Plaintiff asked about her position with the company and in a snarky response, Mr. Whetstone said, "…we decided to terminate you…."

47.   Plaintiff Rodas informed Defendant Whetstone that he was supposed to hold her position until her return.  Defendant Whetstone stated:  "I decided to terminate you, but don't worry; we have prepared these letters for the unemployment office.  I don't want them to think I terminated you because you were pregnant.

48.   Defendant Whetstone soon thereafter submitted three letters to Plaintiff Rodas .  The first stated that Plaintiff would be on FMLA leave starting July 20, 2012.

49.   The second letter issued by Defendant Whetstone states:  "Kelly Rodas's last day with AQG will be on 7/19/12.  Her assignment will end on this date and she will no longer be employed by AQG."

50.   The third letter issued by Defendant Whetstone states:  "Kelly Rodas's will be out of work from 7/20/72 to the first week of September due to lack of work.  Please feel free to contact me should there be any questions.  Thank you."

51.   Upon termination of both pregnant Plaintiffs, neither had been subjected to any form of disciplinary action for any reasons.

52.  On September 11, 2012, both Plaintiffs filed a Charge of Discrimination
with the Equal Employment Opportunity Commission alleging
discrimination based on Pregnancy, Gender and Retaliation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

53.  The allegations contained in paragraphs 1-52 are incorporated herein by
reference.

54.  Plaintiffs have exhausted their administrative remedies as required by 42
U.S.C. § 2000e-5.

55.  Plaintiffs filed a Charge of Discrimination ("Charge") with the Equal
Employment Opportunity Commission ("EEOC") on September 11, 2012
alleging discrimination.

56.  On January 4, 2013, Plaintiffs notices the EEOC of their intent to withdraw
their claims.   In response, the EEOC issued Dismissal and Right-to-Sue
Letter postmarked for February 4, 2013.  Plaintiffs have timely filed this
Complaint within ninety (90) days of receipt of the EEOC right-to-sue-letter.

## FAMILY AND MEDICAL LEAVE ACTE ELIGIBILITY

57.  The allegations contained in paragraphs 1-56 incorporated herein by
reference.

58.  Plaintiffs qualified for leave under the Family and Medical Leave Act as
Plaintiff Lopez was jointly employed by Defendant Assurance and

Defendant Express.  Plaintiff Rodas was employed by Defendant Assurance Quality Group, Inc.

59.  Both employees worked for at least 1, 250 hours over the past 12 months and had previously never requested FMLA leave at prior to the dates subject to this litigation.

60.  Both plaintiff's worked at a location where the company employees 50 or more employees within a 75-mile radius.

61.  Both plaintiffs were pregnant during their employment and were therefore eligible to take leave as their pregnancies are recognized as a FMLA qualifying reason.

62.  Although neither Plaintiff requested to be placed on FMLA, Defendant Assurance interfered in their federal rights by terminating Plaintiff Lopez prior to her taking leave and by terminating Plaintiff Rodas and then terminating her as soon as her leave commenced.

## COUNT I

## INTERFERENCE WITH EXERCISING RIGHTS AFFORDED UNDER THE FMLA 29 U.S.C. § 2601 et seq.

63.  The allegations contained in paragraphs 1-62 incorporated herein by reference.

64. In regards to Plaintiff Lopez, Defendants acquired knowledge that she was pregnant in April 2012.

65. In regards to Plaintiff Rodas, Defendants acquired knowledge that she was pregnant in May 2012.

66. Plaintiff Lopez was an employee of Defendant Express. She started her temporary assignment with Defendant Assurance in January 2012. By the time she delivered her child she would both been eligible and requested leave under FMLA.

67. During her employment, Plaintiff Rodas never requested FMLA, but was forced by Defendants Assurance, Schwartz, and Whetstone to take leave.

68. Plaintiff Rodas informed Defendants Assurance, Schwartz, and Whetstone that she was pregnant in May 2012.

69. Less than one month later, Defendants Assurance, Schwartz, Whetstone and Mobis demanded that Plaintiff Rodas be placed on FMLA. However, Plaintiff Rodas was not due to give birth for at least another month and one half.

70. Plaintiff was fit and was well enough to work until she was ready to take FMLA leave.

71. On June 18, 2012, Defendants terminated Plaintiff Lopez's assignment.

72.  On July 19, 2012, Defendants terminated Plaintiff Rodas' employment while she was out on FMLA leave.

73.  At no time were either of the Plaintiffs subjected to disciplinary action for any reason during their employment.

74.  Defendants termination of both Plaintiffs was unlawful pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. Furthermore, Defendants actions alleged in this complaint were intentional, willful and wanton, and/or done with deliberate indifference and wanton and reckless disregard for Plaintiffs' federally protected rights and the harm caused to Plaintiffs Lopez and Rodas.

75. As a direct and proximate result of the previously stated acts of the Defendants, as alleged in this Complaint, Plaintiffs have in the past and will in the future suffer adverse employment effects, employment status, employee benefits and other benefits of employment.

76. As a direct and proximate result of the previously stated acts of the defendants, as alleged in this Complaint, Plaintiffs have in the past and will in the future suffer mental and emotional pain and suffering, anguish, distress, embarrassment and humiliation.

77. As a direct and proximate result of the previously stated acts of the defendants, Plaintiffs have in the past and will in the future be required to incur other costs.

## COUNT II

## RETALIATION FOR EXERCISING RIGHTS AFFORDED UNDER

## THE FMLA 29 U.S.C. § 2601 et seq.

78. The allegations contained in paragraphs 1-78 are incorporated herein by reference.

79. Plaintiff Rodas can establish the prima facie elements showing Defendants retaliation against her for attempting to exercise her federal right.

80. Plaintiff sought and was qualified for medical leave pursuant to the Act for an FMLA qualifying reason (more specifically because Plaintiff was pregnant).  Thus, on July 19, 2012, when Defendants placed Plaintiff Rodas on FMLA leave, she was involved in a statutorily protected activity.

81.  As soon as Plaintiff started her leave, Defendants terminated her.

82.  On August 15, 2012, Plaintiff Rodas contacted Defendant Whetstone by phone to report that she was ready to return to work. The latter stated that he would "get back to her."  However, it had been two weeks and Plaintiff Rodas did not hear back from Defendant Assurance, Schwartz or Whetstone.

83.  Plaintiff contacted Defendant Whetstone by phone at the end of the two weeks and he informed her that he decided to terminate her on July 19, 2012.

84.  Plaintiff reminded Defendant Whetstone that Defendant Assurance was supposed to hold her position open for her until she returned from FMLA leave.  Defendant Whetstone responded with:  "Well, I decided to terminate you."

85.  Due to Defendants termination of Plaintiff Rodas, she suffered an adverse employment decision at the hand of the defendants.

86.  The adverse decision and the protected activity share a causal connection.  Defendants had sufficient knowledge (or reason to know) of Plaintiff Rodas's pregnancy.   Defendants Assurance, Schwartz, Whetstone and Mobis were aware of Plaintiff's Rodas' pregnancy in May 2012.  She was forced to take FMLA Leave on July 19, 2012, and was terminated the very same day.

87.  Plaintiff Rodas was attempting to exercise her federally protected right with which Defendants directly interfered.   Thus, there is a showing of a causal connection between the adverse decision and the protected activity.

88.  Defendants' retaliation of Plaintiff was unlawful pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.  Furthermore,

Defendants actions alleged in this complaint were intentional, willful and wanton, and/or done with deliberate indifference and wanton and reckless disregard for Plaintiff Rodas' federally protected rights and the harm caused to Plaintiff Rodas.

89. As a direct and proximate result of the previously stated acts of the Defendants, as alleged in this Complaint, Plaintiff Rodas has in the past and will in the future suffer adverse employment effects, employment status, employee benefits and other benefits of employment.

90. As a direct and proximate result of the previously stated acts of the defendants, as alleged in this Complaint, Plaintiff  Rodas has in the past and will in the future suffer mental and emotional pain and suffering, anguish, distress, embarrassment and humiliation.

91. As a direct and proximate result of the previously stated acts of the defendants, Plaintiff Rodas has in the past and will in the future be required to incur other costs.

## COUNT III

## EMPLOYMENT DISCRIMINATION BASED ON PREGNANCY PURSUANT TO PREGNANCY DISCRIMINATION ACT OF 1978, CODIFIED AT 42 U.S.C. § 2000 E(K), AS AMNEDED, CIVIL RIGHTS ACT OF 1964, AND THE CIVIL RIGHTS ACT OF 1991

92.   The allegations contained in paragraphs 1-91 are incorporated herein by reference.

93. The Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq., prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions or privileges of his employment….because of such individual's sex."  42 U.S.C. §2000e-2(1).

94.   In 1978, Congress enacted the Pregnancy Discrimination Act ("PDA"), which amended Title VII to provide the term "because of sex" in the Title VII includes "because of or on the basis of pregnancy, childbirth, or related medical conditions."  42 U.S.C. §2000e(k).  The PDA further states that "women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employee-related purposes…as other person not so affected by similar in their ability or inability to work.

95.   Defendants Assurance, Schwartz, Whetstone and Mobis terminated Plaintiff Rodas' employment because of her pregnancy and impending childbirth.

96.   At all times relevant to this complaint, Plaintiff Rodas was an "employee" within the meaning of Title VII.

97.   At all times relevant to this complaint, Defendants were the "employer" within the meaning of Title VII.

98.   Defendants Assurance, Schwartz, Whetstone, Express, and Mobis terminated Plaintiff Lopezs' assignment with Defendant Assurance Quality Group, Inc. because of her pregnancy and impending childbirth.

99.   Defendants Assurance and Express were joint employers for Plaintiff Lopez.  Therefore, both Defendants are liable for the adverse employment actions taken by Defendants Assurance, Schwartz and Whetstone.

100.   Defendants actions described above directly and proximately have caused, and continue to cause, Plaintiffs to suffer loss of income and other financial benefits, a loss of further professional opportunities and future income and damage to their professional reputation.

101.   Defendants actions described above directly and proximately have caused and continue to cause, Plaintiffs to suffer humiliation, embarrassment and emotional distress.

102.     Defendants engaged in discriminatory actions describe above with malice and with reckless indifference to Plaintiffs' legal rights, thus entitling Plaintiffs to punitive damages.

## COUNT IV

## DISCRIMINATION BASED ON GENDER PURSUANT TO TITLE VII, 42 U.S.C. § 1981 AND 42 U.S.C. §2000e

103.     The allegations contained in paragraphs 1-102 are incorporated herein by reference.

104.     Both plaintiffs are members of a protected class, as they are female and at the time relevant to this complaint were pregnant.

105.     Both plaintiffs were subjected to adverse employment action. Defendant Assurance terminated Plaintiff Lopezs' assignment when they became aware of her pregnancy.   After Plaintiff Rodas informed Defendant Assurance of her pregnancy, she was forced to take FMLA leave and terminated the same day she started leave.

106.     Both plaintiffs were qualified for their positions and had never been subjected to any form of disciplinary action for any reason.

107.     Defendant Assurance replaced both plaintiffs with individuals that were not pregnant.

## COUNT V

## RETALIATION PURSUANT TO TITLE VII, 42 U.S.C. § 1981 AND 42 U.S.C. §2000e

108.     The allegations contained in paragraphs 1-107 are incorporated herein by reference.

109.      Defendants have retaliated against Plaintiff Rodas based on their gender, pregnancy and impending births, which is in direct violation of the Civil Rights Act on 1964 (as amended), 42, U.S.C. §2000e and 42 U.S.C. § 1981.

110.     Plaintiff Rodas engaged in a protected activity.  Plaintiff Rodas opposed the discriminatory treatment twice during her employment with Defendant Assurance.

111.      Plaintiff Rodas' first time opposing the discriminatory treatment was in June 2012.  Defendant Whetstone told Plaintiff that the company cannot keep her and Plaintiff Lopez employed because "pregnant women were liabilities to the company."   Defendant Whetstone then required Plaintiff Rodas to take FMLA leave due to her pregnancy and terminated her on the same day she started her leave.

112.     Plaintiff Rodas opposed the discriminatory treatment for the second time when Defendant KD Kim approached her during the workday and

demanded that she leave the premises.  Plaintiff asked Defendant Kim if she was being treated this way "because she was pregnant."

113.      After this conversation with Defendant Kim, Plaintiff was sequestered to an almost vacant warehouse that had no air conditioning and water, and the bathrooms were inoperable.

114.      The adverse employee action occurred when Defendant Assurance terminated Plaintiff Rodas on the day she started her FMLA leave. However, Defendant Assurance did not inform Plaintiff of her termination until late August 2012.  Defendant Assurance ultimately backdated Plaintiff Rodas' termination to the day she was placed on FMLA leave, which was July 19, 2012.

115.      A causal link exists between the protected activity and the adverse employee action.  An inference of such causal link can be established based on the timing of the aforementioned events.  Furthermore, Defendant Assurance knew that Plaintiff Rodas engaged in the protected activity.

116.      Defendants' discriminatory conduct against the plaintiffs was unlawful pursuant to the applicable aforementioned statutes.  Furthermore, Defendants actions alleged in this complaint were intentional, willful and wanton, and/or done with deliberate indifference and wanton and reckless disregard for Plaintiff Rodas' federally protected rights.

117.    As a direct and proximate result of the previously stated acts of the Defendants, as alleged in this Complaint, Plaintiff Rodas has in the past and will in the future suffer adverse employment effects, employment status, employee benefits and other benefits of employment.

118.    As a direct and proximate result of the previously stated acts of the defendants, as alleged in this Complaint, Plaintiff Rodas have in the past and will in the future suffer mental and emotional pain and suffering, anguish, distress, embarrassment and humiliation.

119.    As a direct and proximate result of the previously stated acts of the defendants, Plaintiff Rodas have in the past and will in the future be required to incur other costs.

**WHEREFORE**, Plaintiffs requests that this Court award the following relief:

1. Order all Defendants to institute and carry out policies, practices, and programs that eradicate unlawful discrimination.

2. Order Defendants to pay Plaintiffs:

    a. Back Pay;

    b. Front Pay;

    c. Lost benefits;

    d. Emotional distress damages;

    e. Liquidated Damages;

   f.  Punitive Damages;

   g.  Attorneys' fees and costs as provided by statute; and

   h.  Any other relief to which Plaintiffs may be entitled.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

Samantha Lopez and Kelley Rodas demand a trial by jury of this action.

This the **30**[th] day of **April**, **2013**.

Respectfully Submitted By:

\_\_/s/ Sadiqa Banks_____

Sadiqa (Sadie) Banks
Georgia Bar No.: 172535
The Banks Law Group, PC
3535 Peachtree Rd. NE
Suite 520-651
Atlanta, Georgia 30326
P- (404) 492-7915
F- (404) 492-7071
E- BanksLawGroup@gmail.com
*Counsel to Plaintiff*