IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| KELLEY RODAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 3:13-CV-77-TCB |
| ASSURANCE QUALITY GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## CONSOLIDATED PRETRIAL ORDER

1.

There are no motions or other matters pending for consideration by the court except as noted:

**None currently exist. However, the parties anticipate that they each may file one or more motions in limine. All such motions in limine will be filed no later than three (3) weeks in advance of the start of trial.**

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery.  (Refer to LR 37.1.B)
Provided there is no resulting delay in readiness for trial, the parties shall however,

be permitted to take depositions of any persons for the preservation of evidence and for use at trial.

**All discovery has been completed.**

3.

Unless otherwise noted the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**The names of the parties are correct.  There is no claim of misjoinder or non-joinder. The parties who have been dismissed from this action have been removed from the case caption.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of court; jurisdiction is based upon the following code sections (Where there are multiple claims, list each claim and its jurisdictional basis separately.)

**a.  Plaintiff alleges that she was removed from the workplace because she was pregnant in violation of Title VII.  (Jurisdiction for all claims in this case is based on <u>28 U.S.C. § 1331.</u>)**

**b.  Plaintiff contends that she her employment was terminated because she was pregnant in violation of Title VII.  .  (Jurisdiction for all claims in this case is based on <u>28 U.S.C. § 1331.</u>)**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff:          **Sadiqa (Sadie) Banks**
                    **Georgia Bar No.: 172535**
                    **The Banks Law Group, P.C.**
                    **3535 Peachtree Road, NE, Suite 520-651**
                    **Atlanta, GA  30326**
                    **(404) 492-7915**
                    **(404) 492-7071 facsimile**

Defendant:          ***Regina S. Molden***
                    **Georgia Bar No.:  515454**
                    **<u>Molden & Holley, LLC</u>**
                    **Peachtree Center-Harris Tower**
                    **233 Peachtree Street N.E.**
                    **Suite 1245**
                    **Atlanta, Georgia 30303**
                    **(404) 324-4500**
                    **Facsimile:  (404) 354-4501**
                    **<u>Email</u>: rmolden@moldenholley.com**


Other Parties:      **None**

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)).  State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

   **None.**

7.

The captioned case shall be tried (<u>X</u>) to the jury or (__) to the court without a jury, or (__) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury considered separately issues such as liability and damages.  State briefly the reasons why trial should or should not be bifurcated.

**For Plaintiff:  The plaintiff does not request bifurcation, as the liability and damages in this case are intertwined and bifurcation would require recalling many witnesses. Counsel for Plaintiff is coming from another jurisdiction.**

**Defendant requests bifurcation as to the issues of (1) whether the decision to place Plaintiff on unpaid maternity leave constitutes pregnancy-based discrimination in violation of Title VII and whether Plaintiff's employment was terminated in an act of pregnancy-based discrimination in violation of Title VII, and (2) the amount of any damages, if Defendant is found to be liable to Plaintiff in any way. Defendant believes the trial should be bifurcated in this manner as the issue of damages will not arise unless Defendant is found by the jury to be liable for discrimination in violation of Title VII.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propounded to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination. Attached hereto as attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4" etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire exam. **Not applicable**.

The court, shall question the prospective jurors as to their address and occupation and as to their occupation of a spouse, if any. Counsel may be permitted to ask follow up questions on these matters.  It shall not, therefore, be necessary for counsel to submit questions regarding these matters.  The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to plaintiff's voir dire questions:

**Defendant objects generally to Plaintiff's voir dire questions as being overly detailed and voluminous such that propounding them will waste the time of the Court, the parties, and the potential jurors. Defendant further objects to those of Plaintiff's voir dire questions which purport to state the law, as the provision of such information to the jury is properly the province of the Court.**

State any objections to defendant's voir dire questions:

**NONE**.

State any objections to the voir dire questions of the other parties, if any:

**Not applicable.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes.  Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. §1870. <u>See</u> Fed. R. Civ. P. 47(b).

**Plaintiff:  The plaintiff does not seek any additional strikes.  Plaintiff does not agree with Defendants reservation to seek additional strikes.**

**Defendant: No additional strikes are requested at this time; however, the defendant reserves the right to seek additional strikes from the Court should circumstances arise during voir dire that may require them.**

13.

State whether there is any pending related litigation.  Describe briefly, including style and civil action number.

**There is no pending related litigation.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence.  All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading.  In negligence cases, each and every act of negligence relied upon shall be separately listed.  For each item of damage claimed plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law.  Rule, regulation or any decision authorizing a recovery for that particular item of damage.  Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied up on as creating a defense shall be listed under a separate heading.  For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing for the particular item of damage.  Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as attachment "E" are the facts stipulated by the parties.  No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case.  It is the duty of counsel to cooperate fully with each other to identify all undisputed facts.  A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

The legal issues to be tried are as follows:

**Plaintiff:**

1.  Whether Plaintiff's placement on maternity leave can establish pregnancy discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA");

2.  Whether Plaintiff can establish that her termination was a result of discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA");

3.  Whether Defendant acted with malice or reckless indifference to Plaintiff's protected rights; and

4.  Whether Plaintiff is entitled to damages, and if so, in what form and/or amount.

**Defendant:**

1.  Whether Plaintiff was suspended in July 2012 for issues with her work performance or went on maternity leave due to her pregnancy, and whether either legally may constitute an act of pregnancy discrimination in violation of Title VII.

2.    **Whether the decision to place Plaintiff on unpaid maternity leave in July 2012, if that in fact did occur, legally may constitute an act of pregnancy discrimination in violation of Title VII.**

3.    **Whether the decision to suspend Plaintiff in July 2012, if that in fact did occur, legally may constitute an act of pregnancy discrimination in violation of Title VII.**

4.    **Whether Plaintiff's employment was terminated in an act of pregnancy discrimination in violation of Title VII.**

5.    **Whether Defendant acted with malice or reckless indifference to Plaintiff's protected rights; and**

6.    **Whether Plaintiff is entitled to damages, and if so, in what form and/or amount.**

7.    **Whether Defendant is entitled to recover attorneys' fees should it prevail in this action.**

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and addresses for each party. The list must designate the witnesses who the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express any opinion under Rule

702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included.  Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means.  Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G-3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial.  Learned treaties which are expected to be used at trial shall not be admitted as exhibits.  Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts.  Adequate space

must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page must and be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all

the parties or permission of the court.  Exhibits so admitted must be numbered,

inspected by counsel and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering

thereof) prior to trial.  Counsel will not be afforded time during trial to examine

exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed

below may be introduced by deposition:

**For Plaintiff:**

> **Deposition of Kelley Rodas**
> **Deposition of Samantha Lopez**

**Plaintiff designates the depositions of Kelley Rodas and Samantha
Lopez.  Defendant objects to Plaintiff's designation to the extent that Plaintiff
has not shown that either Ms. Rodas or Ms. Lopez is unavailable for trial of
this action and because Plaintiff has failed to designate specific portions of the
depositions she seeks to be introduce at trial.**

**The parties reserve the right to utilize deposition testimony under
applicable rules for purposes of impeachment or in the event a witness is
shown to be unavailable at the time of trial.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial.  Objections not perfected in this manner will be deemed waived or abandoned.  All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted.  Depositions, whether preserved by stenographic means or videotape, shall not go out with jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case.  Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

**The parties reserve the right to file trial briefs, which shall be filed not later than seven (7) days prior to the first day of trial.**

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial.  Requests which are not timely

filed and which are not otherwise in compliance with LR 51.1, will not be considered.  In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit district Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge.  For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

**The parties will submit their requested charges by 9:30a.m. on or before the date that this case is calendared (or specifically set) for trial.**

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in attachment "I" to this Pretrial Order.  If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**Plaintiff's proposed verdict form is attached as Exhibit I-1.**

**Defendants' proposed verdict form is attached as Exhibit I-2.**

15

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side.  Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**Plaintiff requests one hour for argument. The factual basis for the case is extensive, and one-half hour does not allow Plaintiff sufficient time to explain the facts and legal issues in the case.**

**Defendant does not seek additional time. However, should the Court grant Plaintiff's request for a full hour of argument, Defendant respectfully requests that it too be given an hour in order to adequately respond to the argument made by Plaintiff.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed findings of fact and conclusions of law not later than the opening of trial.

**Not applicable.**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on February 11, 2015, Defendant requested an offer of settlement, which was presented by Plaintiff, however,

defendants have been nonresponsive.[1]  The court (__) has or (**X**) has not discussed

settlement of this case with counsel.  It appears at this time that there is

(__) A good possibility of settlement.

(__) Some possibility of settlement

(**X**) Little possibility of settlement

(  ) No possibility of settlement.

Pursuant to LR 16.3, NDGa, lead counsel and persons possessing settlement authority to bind the defendant has not engaged in good faith discussion to discuss settlement of this case.  The court (_____) has or (__X__) has not discussed settlement of this case with counsel. It appears at this time that there is:

(_____) A good possibility of settlement.
(_____) Some possibility of settlement.
(_____) Little possibility of settlement.
(___X___) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special

setting, and it will be scheduled by the clerk in accordance with the normal practice

of the court.

_____

[1] On April 2, 2015, counsels for the parties conferred by phone regarding the language under Paragraph 26 of this Consolidated Pretrial Order.  Counsel for the defendant disagree with the language of this paragraph in that Defendant has always acted in good faith with regard to settlement, but as the parties remain extremely far apart, settlement discussions have not been fruitful.  Counsel for Plaintiff submitted an offer of settlement over three weeks ago, she heard nothing further from the defendants.  Today, the defendants have provided a counteroffer.

28.

The plaintiff estimates that she will require **two** **(2)** day(s) to present her evidence.  The defendants estimate that they will require **one** **(1)** day to present their evidence.  It is estimated that the total trial time is **three** **(3)** days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (X) submitted by stipulation of the parties or (__) approved by the court after conference with the parties.

IT IS FURTHER ORDERED. That the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings with are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any part or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED    this ____day of _____, 2015.


_____
TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE

18

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.


s/Sadiqa (Sadie) Banks
Counsel for Plaintiff

s/ Regina S. Molden
Counsel for Defendants

## ATTACHMENT A
### (Questions Regarding Legal Qualifications)

The parties request that the Court propound to the jurors the following questions to determine their legal qualifications to serve, pursuant to 28 U.S.C. § 1865:

1. Are you sufficiently proficient in reading, writing, and understanding the English language?

2. Are you over 18 years of age?

3. Do you currently have a criminal charge, either in State or Federal Court, pending against you that is punishable by imprisonment for more than one year?

4. Have you been convicted in State or Federal Court of a crime punishable by imprisonment for more than one year; and if so, have your civil rights been restored?

5. Do you have any physical or mental health conditions that would prevent you from serving as a juror in this case?

6. Do you currently live in one of the following counties:  Cherokee, Clayton, Cobb, DeKalb, Douglas, Fulton, Gwinnett, Henry or Rockdale?

7. Have you resided in one of these counties for a period of at least one year?

8. Are you a citizen of the United States?

9.     Are you related by blood or marriage to anyone employed by any of the law firm of Molden & Holley, LLC, Molden Law, LLC or The Banks Law Group, PC?

10.    Have you ever been employed by any of the law firm of Molden & Holley, LLC, Molden Law, LLC or The Banks Law Group, PC?

11.    Have you ever been employed by any of the parties in this case?

12.    Do you know any of the attorneys in this case: Regina S. Molden, Alec MacInnes, or Sadiqa Banks?

13.    Do you know any of the parties in this case?

14.    Are you related by blood or marriage, or have you had any dealings of any kind with any of the following persons:

a.  An officer, director, agent or employee of Assurance Quality Group, Inc., Mobis, Kia, Rehau, P-Land, or Express Services

b.  Plaintiff Kelley Rodas

c.  Samantha Lopez

d.  Stephen Whetstone

e.  Brent Schwartz

15.    Does any member of this panel know of Assurance Quality Group, Inc., Mobis, Kia, Rehau, P-Land, or Express Services?

16.   Do you have any interest, financial or otherwise in the outcome of this suit?

17.   Has anyone already formed an opinion about this case or any of the parties in this case?

18.   Is there anyone who feels, for any reason at all, that they cannot be fair and impartial if selected as a juror in this case?

19.   Do you have any particular knowledge of this case or any of the facts in connection with it, including anything you may have read or heard from any source whatsoever, such as a friend, relative, or any news media?

20.   Have you ever served on a jury before? If so, please describe the nature and outcome of the case.

21.   Are you currently taking any medicine or drug that might impair your ability to render satisfactory jury service in this action? Please explain.

**ATTACHMENT B-1**
**(Questions Plaintiff Wishes To Propound To the Jurors on Voir Dire Examination)**

1. Do you know, however slightly, any person who works or has worked for Assurance Quality Group, Inc., Mobis, Kia, Rehau, P-Land, or Express Services? If your answer is yes, then also state the position in which this person is employed, the department in which this person works, and the dates of employment.

2. Have you ever had any interaction with Assurance Quality Group, Inc., Mobis, Kia, Rehau, P-Land, or Express Services? If so, please describe the nature of your interaction and when it took place.

3. Has any juror ever transacted business with any employee of Assurance Quality Group, Inc., Mobis, Kia, Rehau, P-Land, or Express Services?

4. Are there any of you who yourselves or any member of your immediate family who have any specialized knowledge regarding the inspection of automobile parts or the automobile industry?

5. What is your education level (e.g., high school graduate, attended college, graduated college, graduate school, degrees held, specialized training)?

6. Have you had any prior experience with the legal system as a plaintiff or defendant? If so, what was the result? Were you satisfied or dissatisfied with the overall experience?

7.  Have you ever been a witness in any legal proceeding? What aspect were you a witness for? Were you satisfied or dissatisfied with the overall experience?

8.  Have you ever engaged the services of an attorney? Were you satisfied or dissatisfied with the overall experience?

9.  Have any of you ever had occasion to meet the plaintiff, Kelley Rodas? If so, please describe the nature of your contact with him.

10. Are any of you acquainted with or related to any of the attorneys employed by Assurance Quality Group, Inc., Mobis, Kia, Rehau, P-Land, or Express Services, including the defendants' current counsel and its law firm?

11. Have you or any member of your family attended law school, engaged in the practice of law, or worked in a law office?

12. Are there any of you who yourselves, or any member of your immediate family, who has ever been a plaintiff or a defendant in any suit brought as a result of allegations of employment discrimination or retaliation?

13. Are you or any member of your immediate family at this time a party to a lawsuit?

14. Have you served previously on a jury in either the state or federal court? If so, what type of case was it? Was the jury able to reach a verdict? Were you the foreperson?

15. What do you dislike about your work?

16. Some people think there are too many frivolous lawsuits. Other people think the amount of lawsuits is about right. How many of you are closer even a little-to the people who think there are too many frivolous lawsuits? Tell me about it. What else?

17. Do you have any familiarity with the case law regarding Title VII, or any laws covering discrimination and retaliation based on pregnancy, race, national origin, and gender? If so, state the source of your information or legal training and what you understand the law to be regarding pregnancy discrimination.

18. Have any of you or any of your relatives or close personal friends ever experienced discrimination in the work place?

19. Have any of you or any of your relatives or close personal friends ever experienced pregnancy discrimination in the work place?

20. Have you or any member of your immediate family ever served in the military?

21. Have you or any of your relatives or close personal friends ever been accused of committing acts of discrimination of any kind in the work place?

22. Have you ever had occasion to file a charge of discrimination against any employer or with the Equal Employment Opportunity Commission?

23. Have you or any of your relatives of close personal friends ever been involved in a legal dispute with a current or former employer?

24. Have you had an occasion to meet any of the following people who may be called as witnesses in this case? [PLEASE SEE WITNESS LISTS ATTACHED TO PRETRIAL ORDER]

25. Is there any reason why you could not give a fair and impartial hearing to either party in a case where a Plaintiff alleges she was terminated because she was pregnant?

26. Is there any reason why you could not give a fair and impartial hearing to either party in a case where a female plaintiff alleging that she was forced on leave because she was pregnant?

27. Is there any reason why you could not give a fair and impartial hearing to either party in a case where a female plaintiff alleging that she was terminated because she was pregnant?

28. Do you attend any church or synagogue with any degree of regularity? If so, what is the name of the church and how often do you attend?

29. Do you have any religious beliefs or principles that would make it difficult or impossible for you to serve as a juror in this case?

30. How many of you have ever terminated anyone for what you feel to be just or unjust reasons?

31. How many of you are employers, supervisors, management etc.?

32. Do you believe that foreign companies are exempt from following the laws of the United States?

33. Do you believe that companies gain an unfair competitive advantage when they do not follow the laws?

34. Do you think pregnant women can be discriminated against?

35. Does anyone believe that employees are not entitled to make complaints about discrimination without losing their jobs or being discriminated against by their employers?

36. Does the term "discrimination based on a woman being pregnant" have a negative connotation to you?

37. Have you, any family member, neighbor or co-worker ever been discriminated against or retaliated against after making a complaint at work?

38. Have you personally ever made a complaint of discrimination at work or have you or any close personal friend been accused of violating discrimination laws?

39. Have you read books and magazine articles you have read or television shows you have seen regarding race, gender, or national origin discrimination?

40. What organizations do you or your family members belong to?

41. If you find that it is more likely than not that the Plaintiff's allegations are true, you must find for the Plaintiff in this case. Please raise your hand if you would

need either more proof or more certainty than more likely than not before you find for the Plaintiff.

42. This is a case in which money damages are sought as compensation for involuntarily placing a pregnant employee on leave and then terminating her employment. Do you have any disagreement whatsoever with our system of justice which provides that disputes such as this should be brought before a jury of people such as yourself for resolution?

43. Plaintiff is seeking back pay, front pay and actual damages in a significant amount. If you believe from the evidence presented and the law as given you in the charges by the Court that Plaintiff are entitled to recover such amount, please raise your hand if you would have any hesitation whatsoever about awarding a significant amount of damages.

44. In order to award damages, you only need to determine whether it is more likely than not that the damages that the Plaintiff has asserted is the correct amount. Please raise your hand if you would need more proof than that to award money to the Plaintiff.

45. Some people feel that a Plaintiff should not come to court asking a jury to compensate them for the damages they allege to have suffered. Others feel that it is appropriate. Are you closer, even a little bit, to the group that feels that a

Plaintiff should not come to court asking a jury to award an amount of money for damages?

46. Many people would have a little trouble giving money for pain and suffering because it doesn't make the pain and suffering go away. Other people think money for pain and suffering is okay. How many of you are closer to people who think money for pain and suffering is okay? How many of you are closer to the people who would have trouble—even a little—giving money for pain and suffering because it can't make the pain and suffering go away? Please tell me about that.

47. How do you feel about whether there should be upper or lower limits on the amount of money jurors should be allowed to give?

48. Do you feel like people who are already well-off should not seek money damages in a lawsuit if they feel they have been wronged?

49. At the end of this trial, if you think it will take just $50 to make up for what happened here – but if you know that the Plaintiff wants much more than $50 – what trouble would have you have ignoring what the Plaintiff wants and deciding on a verdict of only fifty dollars, if that's what you think is fair, in spite of feeling sorry for the Plaintiff?

Now here's the other side of that question. If you decide it will take, say, twenty-five million dollars to make up for what happened to the Plaintiff, what

trouble would you have – even a little – in deciding on a verdict like that if you thought it was fair, in spite of feeling sorry for the defendants, who'll want it to be much less?

50. Given the kind of person you are, your attitudes, life experiences, opinions, everything about you, what is there about you that might help you, even a little, in being a juror on this kind of case? Other than your ability to be fair and listen to both sides?

51. Given the kind of person you are….what is there about you that you think might make it just a little bit harder for you to be a juror in this kind of case?

52. Responsibility means paying enough money compensation to fully equally the losses and the level of harm – without putting anything into the scale except those losses and harms. That's the law. Who here thinks they might have trouble, even a little, keeping things off the scale that don't belong here?

53. What else is there – anything at all – that you would want to know about you, if you were me standing up here and trying to decide who will be on the jury? Anything? Even if you're not sure it makes any difference?

54. If you are a juror in this case, you will have some rights. It is extremely important that you understand these rights, and that you will exercise them as often as the need arises. First, you will have the right to hear all the testimony. So if a witness says something you don't hear, will you be comfortable raising

your hand and telling the judge, "Your honor, I did not hear what the witness said." Will you do that?

55. As you a juror you will have a second right: the right to understand the law. Nothing can be more important. But every so often during deliberations, jurors disagree over what the law is. Sometimes a juror is just not sure. And sometimes a discussion will start about what the law really is. So if any of that happens, instead of trying to decide among yourselves, will you be comfortable telling your foreperson to knock on the jury room door and ask the bailiff to tell the judge there is something about the law you need to hear about again?

56. Do any of you work in the human resources department of any company? If so, does your company maintain any policies regarding complaints of discrimination lodged with employees? Are you familiar with how your company is supposed to treat an employee who is pregnant?

57. Do any of you feel that it would be difficult for you to render an unbiased and impartial verdict in this case for any reason that we have not discussed?

58. In this kind of case you are called on to decide whether we are "more likely right than wrong." "More likely right than wrong"—you can have doubts on both sides. As many doubts as you want. As long as after you weigh all the doubts you believe we are more likely right than wrong. If we just tip the scales just a little. Now, we expect to show far more than tipping the scales a little. But

all we have to do is tip the scales just a little. Since that's all we have to do,
some folks think it's not enough because it makes it too hard on the other side,
the defense. Maybe even a little unfair. Other folks think it's okay. Mr.
Potential Juror, are you closer to thinking it might be a little unfair? Or are you
closer to the folks who think it's okay? Where do you come between the two?
Tell me about that. Who thinks it's okay?

59. Anyone else have any problems with "more likely than not"? It's the way we
all hope you make your decision. The defense attorneys agree you should
decide the case on that basis no matter how many doubts you have, and the
judge will tell you it's the law. So just to be sure, anyone else have even a small
problem with that?

60. Given the kind of person you are, your attitudes, life experiences, opinions,
everything about you, what is there about you that might help you, even a little,
in being a juror on this kind of case? What about other than your ability to be
fair and listen to both sides? Given the kind of person you are, your attitudes,
life experiences, opinions, everything about you, what is there about you that
you think might make it just a little bit harder for you to be a juror on this kind
of case?

61. Responsibility means paying enough money compensation to fully equal the
losses and the level of the harm—without putting anything into the scale except

those losses and harms. That's the law. Who here thinks they might have trouble—even a little—keeping things off the scale that don't belong there?

62. What else is there—anything at all—that you would want to know about you, if you were me standing up here and trying to decide who will be on the jury? Anything? Even if you're not sure it makes any difference?

63. You have rights as a juror—one of the rights is to hear all of the evidence. So if a witness says something you don't hear, will you be comfortable raising your hand and telling the judge? You have a second right—to understand the law. Every so often during deliberations, jurors disagree over what the law is. Sometimes a discussion will start. Will you be comfortable asking the judge to read the instructions again instead of trying to decide it among yourselves?

Plaintiff reserves the right to ask any questions identified in A or B-2 to this Pretrial Order to the extent that they are not asked by the Court or by Defendant. Plaintiff also reserves the right to ask reasonably related follow-up questions to any of the enumerated questions.

## ATTACHMENT B-2
### (Questions Defendants Wish To Propound To the Jurors on Voir Dire Examinations)

1) Have you already formed any opinion about either the Plaintiff or the Defendant in this case?

2) Do you have any reason to believe that you will not be able to be impartial if you are selected to serve as a juror in this case?

3) What is your highest level of education?

4) What is your current employment?

5) Have you ever sued an employer for discrimination of any kind, including but not limited to, discrimination on the basis of pregnancy?

6) Have you ever been suspended from your employment? If so, what was the stated reason for your suspension?

7) Have you ever been suspended from your employment and felt that your suspension was motivated by some form of discrimination?

8) Have you ever been terminated from your employment and felt that your termination was motivated by some form of discrimination?

9) Have you ever filed a lawsuit of any type against an employer?

10) Have you, or any member of your immediate family, ever been a plaintiff or a defendant in any lawsuit?  If so, state whether you were a plaintiff or defendant, and describe the lawsuit.

11)   Were you satisfied with the way your lawsuit was handled and resolved?

12)   Are you, or any member of your immediate family or a close friend, presently a plaintiff or defendant in a lawsuit?

13)   Have you previously served on a jury in either State or Federal court?  If so, please tell us the type of case, whether the jury reached a verdict, and whether you were the foreperson.

14)   If you have previously served on a jury, were you pleased with, or frustrated by your jury service?

15)   Has anyone had any legal training or education regarding employment law?

16)   Have you, or any member of your immediate family, ever not been promoted in favor of someone who you (or they) felt was undeserving, or because of other reasons that were not related to job performance?

17)   Have you ever filed a grievance of any kind with an employer? If so, please explain the basis of the grievance.

18)   If you have ever been pregnant, or had a spouse who was pregnant, did either you or your spouse take leave related to the pregnancy? If so, did you or your spouse return to employment after such leave?

19)   If you have ever been pregnant, or had a spouse who was pregnant, did either you or your spouse attempt to take leave related to the pregnancy and had such request for leave denied?

20)   Have you, or anyone you know, ever been suspended or terminated from employment while pregnant?

21)   Have you ever taken leave from your employment by invoking rights provided by the Family Medical Leave Act, the Americans with Disabilities Act, or any other State or Federal Law?

22)   Have you ever owned your own business?

23)   Have you ever worked in Human Resources?

24)   Have you ever managed other employees?

25)   Have you ever disciplined, suspended, or terminated a subordinate?

26)   Have you ever had to request time off from work for a personal or family reason?

27)   Have you ever requested that an employer adjust your work schedule for reasons related to your children or family? If so, was the request granted?

28)   Have you ever worked for or with Kia Motors?

29)   Have you ever worked for or with any other automaker based in Asia?

30)   Have you ever worked for or been supervised by a person of Korean ancestry or descent?

36

31)   Have you ever been supervised by someone of other East Asian ancestry

or descent?


Defendant reserves the right to amend or modify this Attachment B-2 up to five

days before trial.

## ATTACHMENT C
### (Plaintiff's Outline of the Case)

In January 2011, Employment Services Inc., (hereinafter "Express") a temporary employment agency,  assigned Plaintiff Kelley Rodas on  a project with its client, Defendant Assurance Quality Group, Inc. (hereinafter "AQG"). Her title upon assignment was Inspector. In January 2012, Ms. Samantha Lopez (hereinafter "Ms. Lopez") was also assigned by Express to Defendant AQG to perform as an Inspector as well. In this role, both Plaintiff Rodas and Ms. Lopez were assigned to inspect auto parts that were manufactured by AQG's client, Rehau, Inc. (hereinafter "Rehau")  Due to Plaintiff Rodas' good performance, in March 2012, Defendant AQG hired Plaintiff Rodas as a permanent employee. Defendant also made Plaintiff Rodas a supervisor over all AQG Inspectors including Ms. Lopez. During all relevant times of this complaint, Plaintiff Rodas reported directly to Brent Schwartz who served as the Vice President and co-owner for AQG.  Stephen Whetstone is President of AQG.  Both defendants served at this capacity during all relevant times of this action.

When Ms. Lopez started her temporary assignment, she was in her second trimester of pregnancy. Plaintiff Rodas was pregnant when she became a permanent employee with Defendant AQG.  However, it wasn't until February or March 2012, that Plaintiff Rodas contacted Mr. Schwartz to inform him of her pregnancy. Mr. Schwartz informed Mr. Whetstone of Plaintiff Rodas' pregnancy.

There were three shifts of AGQ inspectors.  AQG required each shift to prepare and submit daily reports and inventory reports.  The daily reports included information as to how the auto parts were treated in the inspection process; whether they were reworked, rejected, or deemed "good parts."  Each report from each employee was submitted to AQG, Rehau, Mobis, LLC (hereinafter "Mobis"), and AQG on a daily basis.

Mr. KD Kim (hereinafter "Mr. Kim"), the Operations Manager for Mobis LLC, was aware that Plaintiff Rodas was pregnant. Plaintiff Rodas also affirmed Ms. Lopez's pregnancy to Mr. Kim.  On June 18, 2012, Plaintiff Rodas and Ms. Lopez were in the office downloading pictures of the auto parts, as such was within the scope of their daily duties. Mr. Whetstone contacted Plaintiff Rodas by phone and stated that AQG was instructed by Mr. Kim to get rid of pregnant woman because they are "liabilities." He then instructed Plaintiff Rodas to terminate Ms. Lopez's assignment.

Plaintiff Rodas immediately opposed the treatment against Ms. Lopez by "stating that the company couldn't treat her that way…it is a lawsuit."  Plaintiff Rodas inquired as to whether Ms. Lopez could at least finish "working out the day".  Mr. Schwartz refused the request and again ordered Plaintiff Rodas to immediately end her assignment. Mr. Schwartz then stated to Plaintiff Rodas that AQG would be "making her go out on FMLA" due to her pregnancy.

Unbeknownst to Defendant, Ms. Lopez was seated next to Plaintiff Rodas and overheard the entire conversation and knew that her assignment was being ended because she was pregnant.

One month later, on July 19, 2012, Defendant AQG placed Plaintiff Rodas on involuntary FMLA. The only representations made by Defendant AQG was that she being placed on leave pursuant to the Family and Medical Leave Act. Plaintiff Rodas had no intentions of going out on leave, as Defendant failed to provide her proper notice of her leave rights. Plaintiff Rodas, at no time had ever sought leave under the FMLA. Furthermore, Defendant AQG never provided Plaintiff Rodas with an employee handbook or information as to AQG company policies at any time during her employment. As a consequence, she remained unfamiliar with her leave options, as she prepared to give birth.

Defendant instructed Plaintiff to apply for unemployment benefits while on FMLA. In actuality, Mr. Schwartz prepared three letters in total regarding Plaintiff Rodas' FMLA leave. The first letter was informed Plaintiff Rodas that she was on FMLA leave. The AQG told Plaintiff Rodas that she would be "taken care of" while she was on leave. Mr. Schwartz prepared the second letter instructing her to take it to the Department of Labor in order to get paid while on leave, but not having been satisfied with its content he told Plaintiff Rodas to disregard the letter and then drafted and issued to Plaintiff Rodas a third letter. This third letter stated

that she would be off from work until September due to "lack of work."  Other than the letters presented to Plaintiff Rodas pre-leave, Defendant did not provide proper notification to Plaintiff Rodas regarding her eligibility, rights and responsibilities under the Family and Medical Leave Act.

On August 15, 2012, Plaintiff Rodas delivered her son. By then, she had only been on FMLA leave for approximately 4 weeks.  Merely, three days after the birth of her son, she called Mr. Whetstone to report that she could return to work. Mr. Whetstone stated that he would "try" to place her on the second shift and that he would get back to her. After not having heard from Mr. Whetstone, Plaintiff Rodas made continuous attempts to reach Defendant AQG by phone.  Plaintiff Rodas left voicemail messages for each call attempting to be reinstated. Mr. Whetstone and Mr. Schwartz, however, failed to return her call.  It took for Plaintiff Rodas to call Mr. Schwartz from her mother's phone in order for him to take her call.  On or around August 23, 2012, Plaintiff Rodas finally made contact with Mr. Whetstone.  It wasn't until then that he stated that Defendant AQG "decided to terminate her." Plaintiff Rodas stated that she thought they were supposed to keep her job.  He reinforced that she was terminated. As of the date of her termination, Plaintiff Rodas had never been subject to any form of disciplinary action for any reason and Defendants had never informed Plaintiff Rodas of any issues associated with her performance.

## Applicable Statutes & Authorities Relied On

- Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA").

- 42 U.S.C. § 2000e-2(a)(1)

- *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008)

- *Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999)

- *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973)

- *Davis vs. Town of Lake Park, Florida*, 245 F.3d 1232 (11th Cir. 2001)

- *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)

- *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1382-83 (11th Cir. 1994)) *aff'd* 196 F. 3d 1309 (11th Cir. 1999)

- *Armindo v. Padlocker, Inc.*, 209 F. 3d 1319, 1321 (11th Cir. 2000)

- *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)

- *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012)

- *Int'l. Union v. Johnson Controls, Inc.*, 499 U.S. 187 (1991)

- *Goldsmith v. Bagby Elevator co., Inc.,* 513 f. 3d 1261, 1277 (11th Cir. 2008)

- *Pennington v. City of Huntsville*, 261 f.3d 1262, 1266 (11th Cir.)

- *Williams v. Waste Mgmt.*, 2011 U.S. App. LEXIS 1530 *9 (11th Cir. Jan. 25, 2011)(citing *Thomas v. Cooper Lighting, Inc*., 506 F. 3d 1361, 1364 (11th Cir. 2007))

- *Jones v. Flying J. Inc.*, 2011 W.S. App. LEXIS 1124 *11 (11th Cir. Jan. 19, 2011)

- *Obester v. Lucas Assocs., Inc.*, Civil Action File No. 1:08–CV–03491–MHS–AJB, 2010 WL 8292401, at *24 (N.D. Ga. Aug. 2, 2010), adopted by 2010 WL 8304884, at *4 (N.D. Ga. Sept. 7, 2010) (quoting 42 U.S.C. § 2000e–2(a)).

- *Armindo v. Padlocker, Inc.*,209 F.3d 1319, 1320 (11th Cir. 2000)

- *Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999)

- *Holland v. Gee*, 677 F.3d 1047, 1054-55 (11th Cir. 2012) (citing Armindo, 209 F.3d at 1320)

- *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012)

- *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004)

- *Bryant v. Jones, 696 F.Supp*. 2d 1313, 1324 (N.D. Ga. 2010)

- *Blue v. Dunn Constr. Co.,* 453 F. App'x 881, 884 (11th Cir. 2011)

- *Morales v. Ga. Dep't of Human Res.*, Civil Action No. 7:08–CV–156 (HL), 2010 WL 4639279, at *13 (M.D. Ga. Nov 8, 2010), *aff'd* 446 F. App'x 179 (11th Cir. 2011)

- *Wingfield v. S. Univ. of Fla.,Inc.*, No. 8:09–cv–01090–T–24–TBM, 2010 WL 2465189, at *13 (M.D. Fla. June 15, 2010)

- *Knight v. Computer Scis. Raytheon (CSR)*, No.6:00–cv–1563–Orl–28–DAB, 2002 WL 32818520, at *14 (M.D. Fla. Oct. 25, 2002)

- *Jones v. BE&K Eng'g Co.*, 146 F. App'x 356, 358 (11th Cir. 2005)

- *Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999)

- *Johnson v. Nicholson*, No. 05-13259, 2005 WL 3199278, at *3 (11th Cir. Nov. 30, 2005)

- *Spellen v. Univ. of Ala. at Birmingham*, No.2:08–cv–01331–HGD, 2012 WL 1745544, at * (N.D. Ala. Mar. 16, 2012), adopted by 2012 WL 1745540, at *1 (N.D. Ala. May 16, 2012)

- *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)

- *Caban–Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990)

- *Locascio v. BBDO Atlanta, Inc.*, Civil Action File No. 1:14-cv-00207-TWT-RGV, at [Doc. 11 at 2 (citations omitted)] (N.D. Ga. Aug. 1, 2014), adopted at [Doc. 20] (N.D.Ga. Oct. 20, 2014)

- *Smith v. CH2M Hill, Inc.*, 521 F. App'x 773, 775 (11th Cir.2013)

- *Brooks v. D.C. 9 Painters Union*, No. 10 Civ. 7800(JPO), 2013 WL 3328044, at *4 n.2 (S.D.N.Y. July 2, 2013)

- *Crawford v. Dolgen Corp. Inc.*, 790 F. Supp. 2d 1361, 1367 (S.D.Ala. 2011)

- *Rumbley v. Austal USA*, Civil Action No. 1:09–499–KD–B, 2010 WL 4683989, at *11 (S.D. Ala. Nov. 12, 2010)

- *Ferrell v. Masland Carpets, Inc.*, 97F. Supp. 2d 1114, 1122 (S.D. Ala. 2000)

- *Johnson v. Gwinnett Cnty. Sch. Dist.*, Civil Action No. 1:11–CV–00471–TWT–RGV, 2012 WL 5987584, at *9 n.37 (N.D. Ga. Oct. 17, 2012), adopted by 2012 WL 5987581, at *1 (N.D. Ga. Nov. 28, 2012)

- *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003)

- *Collins v. Supreme Beverage Co*., Civil Action No. 11–AR–0058–S, 2012 WL 4953155, at *5-7 (N.D. Ala. Oct. 12, 2012)

- *Jackson v. City of Centreville*, No. 7:09–cv–02115–JEO, 2012 WL 4482393, at *25 (N.D. Ala. Aug. 16, 2012)

- *Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002)

- *Taylor v. Cardiovascular Specialists, P.C.*, Civil Action File No. 1:11-cv-04521-TCB, at [Doc. 62 at 84] (N.D. Ga. Dec. 11, 2013), adopted by 4 F. Supp. 3d 1374, 1383 (N.D. Ga. 2014)

- *Haynes v. Twin Cedars Youth & Family Servs.*, Inc., No. 5:10–CV–321 (CAR), 2012 WL 895699, at *11 (M.D. Ga. Mar.15, 2012)

- *Halford v. Westpoint Home, Inc.*, Civil Action No.2:09cv689–MHT, 2010 WL 3169356, at *7 (M.D. Ala. Aug. 11, 2010)

- *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)

- *Williams v. Crown Liquors of Broward, Inc.*, 851 F. Supp. 2d 1332, 1338 (S.D. Fla. 2012)

- *Piraino v. Int'l Orientation Res., Inc.*, 84 F.3d 270, 274 (7th Cir. 1996)

- *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)

- *Chapter 7 Tr. v Gate Gourmet, Inc.*,683 F.3d 1249, 1255 (11th Cir. 2012)

- *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 (11th Cir. 2008)

- *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)

- *Fodere v. Lorenzo*, 441 F. App'x 666 (11th Cir. 2011)

- *Blackledge v. Ala. Dep't of Mental Health & Mental Retardation*, Civil Action No. 2:06cv321-ID, 2007 WL 3124452, at *24 (M.D. Ala. Oct. 25, 2007)

- *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995)

- *Harper v. ULTA Salon Cosmetics & Fragrance*, Inc.,Civil Action File No. 1:05-CV-1285-TWT, 2007 WL 528088, at *16 (N.D. Ga. Feb. 13, 2007)

- *Wascura v. City of S. Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001)

- *Damon v. Fleming Supermkts of Fla., Inc.*, 196 F.3d 1354,1362 (11th Cir. 1999)

- *Burlington N. & Santa Fe Ry. Co. v. White*,548 U.S. 53, 57 (2006)

- *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194-95 (11th Cir. 2004)

- *EEOC v. Ethan Allen*, 44 F.3d 116, 120 (2d Cir. 1994)

- *Reeves v. Sanderson Plumbing Products*, 530 U.S, 133, 148-151 (2000)

### Elements of Damage under Federal Law

**A.** *Lost Wages Due to Plaintiff's termination:*
*Dollar amount claimed:* **To be determined at the time of trial**
*(Approximately $74,360.00, depending on the date of trial)*
*Authority:* **42 U.S.C. § 2000e-5(g); Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA")**
*Authority: Ford Motor Co. v. EEOC*, **458 U.S. 219, 73 L.Ed.2d 721, 102 S.Ct. 3057, 3064 – 3065 (1982);** *EEOC v. Ilona of Hungary, Inc.*, **108 F.3d 1569, 1580 (7th Cir. 1997)**

**C.** *Compensatory Damages:* **Plaintiff is entitled to compensatory damages for the nonpecuniary consequences of Defendants' unlawful treatment, including emotional pain, suffering, inconvenience, mental anguish, loss of reputation, and loss of enjoyment of life.**
*Dollar amount claimed:* **The amount of compensatory damages will be determined by the jury.**
*Authority:* **42 U.S.C. § 2000e-5(g); Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA")**
**;** *Smith v. Wade*, **461 U.S. 30, 56 (1983);** *Carey v. Piphus*, **435 U.S. 247, 264 (1978);** *Johnson v. Ry. Express Agency, Inc.*, **421 U.S. 454, 460 (1975)**

**D.** *Front Pay:*

46

*Dollar amount claimed:* **To be determined at the time of trial.**
*Authority: 42 U.S.C. § 2000e-5(g);* **42 U.S.C. § 2000e-5(g); Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA");** *Pollard v. E.I. du Pont deNemours & Co., 532 U.S. 843, 848 (2001)*

**E.** *Punitive Damages:*
*Dollar amount claimed:* **The amount of punitive damages will be determined by the jury.**
*Authority:* **42 U.S.C. § 2000e-5(g); Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA")** ; *Smith v. Wade*, **461 U.S. 30, 56 (1983);** *Carey v. Piphus*, **435 U.S. 247, 264 (1978);** *Johnson v. Ry. Express Agency, Inc.*, **421 U.S. 454, 460 (1975)**

**F.** *Pre-judgment interest on unpaid wages*
*Dollar amount claimed:* **To be determined at the time of trial.**
*Authority: CODE SECTION:* **Loeffler v. Frank***, 486 U.S. 549, 557-58 (1988)*

**G.** *Attorneys Fees' and Costs*
*Dollar amount claimed:* **To be determined at the time of trial.**
*Authority:* **42 U.S.C. § 2000e-5(g); Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA")**

**ATTACHMENT D**
**(Defendants' Outline of the Case)**

**DEFENDANT'S FACTUAL SUMMARY OF DEFENSES**

### a) Factual Summary

Defendant denies the allegations set forth in Plaintiff Rodas' Complaint. Plaintiff Rodas has failed to adduce any evidence of pregnancy discrimination. Rodas abandoned her employment with Assurance Quality Group by failing to show up to her assignment meeting without notice and by failing to respond to phone calls, and complained about Defendant's alleged discrimination based on pregnancy only after she abandoned her employment.

Defendant Assurance Quality Group ("AQG"), an Alabama corporation located in Cottondale, Alabama, was owned by Stephen Whetstone (Assurance's president) and Brent Schwartz (vice president) during the time Plaintiff was employed with AQG. AQG provides quality-control tasks on a contractual basis for its clients, which include automotive-parts suppliers. AQG's services are usually performed on site at the client's place of business. AQG often hires temporary workers to perform a particular short-term work order, and these workers are then released when the task is complete. As a result, the number of AQG's employees varies depending on the contracts being performed. AQG

contracts with several temporary staffing agencies, Express Employment Services ("Express") being one.

In December 2010, Plaintiff Kelley Rodas registered with Express, and in January 2011 she accepted a position with AQG on a temporary basis as an inspector at Mobis' Alabama, LLC's ("Mobis") Georgia plant. Mobis was not a client of AQG, and there was no contractual relationship between them. AQG contracted with Rehau Automotive Parts, LLC ("Rehau"), which manufactures parts for Kia Motors and supplies those parts to Mobis.

In or around March 2011, Rodas became a full-time AQG employee, working as an on-site manager at Mobis. During Rodas' employment, Schwartz and Whetstone were rarely present at the Mobis work site. Rodas' supervisors at the Mobis site were Rehau employee Curt Young and Mobis employee K.D. Kim. Rodas supervised all AQG employees at the Mobis' facility. Rodas also supervised AQG employees at a worksite owned by Glovis America, Inc. ("Glovis"), where Rehau parts were stored and inspected by AQG. Rodas was the onsite manager charged with handling any and all issues with respect to parts or personnel at the aforementioned Glovis and Mobis facilities.

In December of 2011, Rodas learned she was pregnant. By March 2012, Schwartz and Whetstone were aware of Rodas' pregnancy. During the course of her pregnancy, Rodas never informed Schwartz or Whetstone about any medical

restrictions stemming from her pregnancy. Rodas also never notified Schwartz or Whetstone about any work-related restrictions in connection with her pregnancy.

From late 2011 until July 2012, AQG received complaints about Rodas' job performance from other AQG workers, Mobis employees, and Rehau employees. By May 2012, AQG believed its business relationship with Rehau was being placed in jeopardy due to problems with Rodas' work performance. AQG attempted to work with Rodas to resolve the problems but ultimately decided that she would have to be removed from the Mobis worksite so that AQG could restore the integrity of its inspection process and preserve its business relationship with Rehau.

In July 2012, Rodas was about eight months pregnant and had already stated to Schwartz that she would need to take maternity leave. Whetstone informed Rodas that he was suspending her employment because of her poor performance and that he would reassign her at another site after she returned from giving birth. Rodas requested that AQG issue her a separation notice so that she would be able to collect unemployment benefits while she was on leave, which AQG did. Neither Rodas' gender nor her pregnancy was a factor in Whetstone's determination to suspend her employment. In the weeks after Rodas' removal, Defendant focused its efforts on reestablishing the integrity of the inspection process at Mobis. With Rodas absent, AQG was successful in doing so and AQG retained Rehau as a

client.

In or around September 2012, after Rodas had given birth, Rodas, Whetstone and Schwartz arranged an in-person meeting in LaGrange, Georgia to discuss Rodas' next assignment. Rodas failed to show up to the in-person meeting and did not respond to Whetstone's text messages or telephone calls. Thus, she abandoned her employment with Assurance in September 2012.

## STATUTES

1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and all regulations interpreting same.

## ILLUSTRATIVE CASE LAW

1) Obester v. Lucas Assocs., Inc., No. 1:08-cv-3491-MHS-AJB, 2010 WL 8292401 (N.D. Ga. Aug. 2, 2010)

2) Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004)

3) Chapter 7 Tr. V. Gate Gourmet, Inc., 683 F.3d 1249 (11th Cir. 2012)

4) Canty v. Fry's Elecs., Inc., 736 F. Supp. 2d 1352 (N.D. Ga. 2010)

5) Busby v. City of Orlando, 931 F.2d 764 (11th Cir. Fla. 1991)

6) Galezniak v. Millville Health Ctr., 2012 U.S. Dist. LEXIS 5808 (M.D. Pa. Jan. 17, 2012)

7) Armstrong v. Flowers Hosp. Inc., 33 F.3d 1308 (11th Cir. 1994)

8) Williams v. Crown Liquors of Broward, Inc., 851 F. Supp. 2d 1332 (S.D. Fla. 2012)

9) Clay v. Holy Cross Hosp., 253 F.3d 1000 (11th Cir. 2001)

10) <u>Spivey v. Beverly Enters.</u>, 196 F.3d 1309 (11th Cir. Ala. 1999)

11) <u>Meeks v. Computer Assocs., Int'l.</u>, 15 F.3d 1013 (11th Cir. 1994)

12) <u>Baugh v. Muscle Shoals Bd. of Educ.</u>, 2013 U.S. Dist. LEXIS 95373 (N.D. Ala. July 9, 2013)

13) <u>Alexander v. Baldwin County Board of Education</u>, 2008 U.S. Dist. LEXIS 61352 (S.D. Ala. Aug. 12, 2008)

14) <u>Equal Employment Opportunity Commission v. Total System Services, Inc.</u>, 221 F.3d 1171 (11th Cir. 2000)

15) <u>Abel v. Dubberly</u>, 122 F.3d 1334 (11th Cir. 2000)

16) <u>Jones v. Bessermer Carraway Medical Center</u>, 151 F.3d 1321 (11th Cir. 1998)

## ATTACHMENT E
### (Stipulated Facts of the Parties)

1) Plaintiff Rodas began performing services to AQG beginning in December 2010 as a contractor.

2) Rodas became employed by Defendant in or around March 2011 as an on-site supervisor.

3) Rodas' employment ceased in 2012.

4) Defendant provides quality control services on a contractual basis to clients.

5) One of Defendant's clients was Rehau Automotive Parts, LLC.

6) Rehau manufactured parts for Kia Motors.

7) Part manufactured by Rehau were supplied to Mobis Alabama, LLC

8) In working for Defendant, Plaintiff was one of the employees that was involved with inspecting Rehau's Kia parts at Mobis' Georgia plant.

9) In service of Rehau, Defendant's purpose was to prevent defective parts from reaching Kia's assembly line.

## ATTACHMENT F-1
## (Plaintiff's Witness List)

The following is a list of the fact witnesses that Plaintiff will have present at trial:

1. Kelley Rodas.  Plaintiff can be contacted through the undersigned attorney.

2. Samantha Lopez
   6 Wallace Street
   LaGrange, GA  30241

The following witnesses may be called:

1. All individuals identified by Defendant.


Witnesses that Plaintiff does not reasonably anticipate calling for rebuttal or impeachment purposes are not included on this list.  In addition, Plaintiff respectfully reserves the right to call at trial any witnesses listed by any other party.

## ATTACHMENT F-2
### (Defendants' Witness List)

Defendant will call:

1.    Stephen Whetstone.

Mr. Whetstone can be reached through his counsel of record.

2.    Brent Schwartz

Mr. Schwartz can be reached through his counsel of record

Defendant may call:

3.    K.D. Kim

At this time, Defendant is unsure of Mr. Kim's address.

4.    Sharon Mack

At this time, Defendant is unsure of Ms. Mack's address.

5.    Curtis Young

At this time, Defendant is unsure of Mr. Young's address.

6.    Annabelle Sturkie

At this time, Defendant is unsure of Ms. Sturkie's address.

7.    Any witness on Plaintiff's Witness list, Attachment F-1.

Defendant reserves the right to call additional rebuttal witnesses based upon the testimony at trial.

## ATTACHMENT G-1
### (Plaintiff's Trial Exhibit List)

| TRIAL EXHIBIT # | BATES –BEGINNING | BATES-ENDING | DESCRIPTION |
|---|---|---|---|
| 001 | DEFENDANT AQG000056 | DEFENDANT AQG000057 | Email dated July 12, 2012, from Defendant Schwartz to Defendant Whetstone carrying Plaintiff Rodas' letter communicating her FMLA leave. |
| 002 | Rodas 0002 | Rodas 0002 | Letter from Defendant Whetstone to Plaintiff Rodas to give to Department of Labor |
| 003 | DEFENDANT AQG000062 | DEFENDANT AQG000064 | Email dated July 17, 2012, from Defendant Schwartz to both Defendants Whetstone and Plaintiff Rodas carrying letter to submit to the Department of Labor for approval of unemployment benefits. |
| 004 | Rodas 0003 | Rodas 0003 | Letter Signed By Stephen Whetstone to Kelley Rodas to be submitted to |

| | | | Department of Labor. |
|---|---|---|---|
| 005 | Rodas 0016 | Rodas 0016 | Plaintiff Rodas' Pay Stubs from AQG |
| 006 | DEFENDANT AQG000001 | DEFENDANT AQG000003 | Letter dated October 3, 2012, from Cynthia Almond to the E.E.O.C |
| 007 | DEFENDANT AQG000010 | DEFENDANT AQG000012 | Letter dated March 11, 2013, from Cynthia Almond to undersigned counsel. |
| 008 | DRFP 0008 | DRFP 0009 | KD Kim's 2010 Performance Review |
| 009 | DRFP 0051 | DRFP 0051 | Email dated July 2, 2012 from KD Kim to Rehau Complainant of Rehau's performance |
| 010 | DRFP 0046 | DRFP 0046 | Email dated May 31, 2012, from KD Kim to Rehau giving Rehau "last warning". |
| 011 | DRFP 0048 | DRFP 0049 | Email dated May 31, 2012, from Rehau to Mobis regarding communication |

| | | | issues |
|---|---|---|---|
| 012 | DRFP 0057 | DRFP 0057 | Email dated August 28, 2012, from Rehau to Mr. Kim admitting that problem is "too many groups are handling the products.") |
| 013 | DRFP 0014 | DRFP 0014 | KD Kim's Letter of Resignation dated September 19, 2012 |
| 014 | DRFP 0054 | DRFP 0054 | Email dated July 24, 2012 dated July 24, 2012 re: Rehau Schedule |
| 015 | DRFP 0001 | DRFP 0004 | Mobis Harassment Policy and Procedures |
| 016 | DRFP 0069 | DRFP 0071 | Mobis' Position Statement submitted to EEOC re: Kelley Rodas |
| 017 | | | Affidavit Kelley Rodas |
| 018 | | | Affidavit of Stephen Whetstone |
| 019 | | | Affidavit of Brent Schwartz |
| 020 | Rodas 0056 | Rodas 0056 | Excuse Slip |

| 021 | Rodas 0004 | Rodas 0016 | Pay Stubs for Kelley Rodas |
|---|---|---|---|
| 022 | Rodas 0001 | Rodas 0001 | Letter (undated) from Whetstone to Kelley Rodas regarding her FMLA leave starting 7/20/12 |
| 023 | Rodas 0002 | Rodas 0002 | Letter (undated) from Whetstone to Kelley Rodas stating that Kelley Rodas' last day of work is 7/19/12 to be provided to DOL. |
| 024 | Rodas 0003 | Rodas 0003 | Letter (undated) from Whetstone to Kelley Rodas to be submitted re: lack of work |
| 025 | Rodas  0022 | Rodas 0025 | EEOC Intake Questionnaire for Kelley Rodas |
| 026 | Lopez 005 | Lopez 0010 | EEOC Intake Questionnaire for Samantha Lopez |
| 027 | AQG000059 | AQG000060 | Email dated July 15, 2012 re: "Last Week's Meeting." |
| 028 | DRFP0047 | DRFP0047 | Email re: QF SXL Sill Side |
| 029 | AQG000045 | AQG000045 | Email re: Angela Oneal |

| 030 | AQG000046 | AQG000046 | Email re: Items |
| 031 | AQG000054 | AQG000055 | Email re: blank 3-Panel |
| 032 | EXPRESS 0045 | EXPRESS 0045 | Express Unemployment Separation Forms |
| 033 | EXPRESS 00047 | EXPRESS 00047 | Express Unemployment Separation Forms |
| 034 | AQG000008 | AQG000009 | Letter from Almond to EEOC re: Samantha Lopez EEOC Charge |

Plaintiff reserves the right to use any exhibits identified on other exhibit lists.  Plaintiff also reserves the right to amend the Exhibit List up to five (5) days before trial of this matter, including the addition of any documents identified or produced by Defendants and reserves the right to submit additional documents for impeachment purposes, as appropriate. Plaintiff further reserves the right to add exhibits based on Defendants' supplemental discovery responses.

**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EXHIBIT LIST**

| TRIAL EXHIBIT # | BATES – BEGINNING | BATES-ENDING | DESCRIPTION | BASIS OF DEFENDANT'S OBJECTION |
|---|---|---|---|---|
| 001 | DEFENDANT AQG000056 | DEFENDANT AQG000057 | Email dated July 12, 2012, from Defendant Schwartz to Defendant Whetstone carrying Plaintiff Rodas' letter communicating her FMLA leave. | |
| 002 | Rodas 0002 | Rodas 0002 | Letter from Defendant Whetstone to Plaintiff Rodas to give to Department of Labor | |
| 003 | DEFENDANT AQG000062 | DEFENDANT AQG000064 | Email dated July 17, 2012, from Defendant Schwartz to both Defendants Whetstone and Plaintiff Rodas carrying letter to submit to the Department of Labor for approval of unemployment benefits. | |

| 004 | Rodas 0003 | Rodas 0003 | Letter Signed By Stephen Whetstone to Kelley Rodas to be submitted to Department of Labor. | |
| 005 | Rodas 0016 | Rodas 0016 | Plaintiff Rodas' Pay Stubs from AQG | |
| 006 | DEFENDANT AQG000001 | DEFENDANT AQG000003 | Letter dated October 3, 2012, from Cynthia Almond to the E.E.O.C | |
| 007 | DEFENDANT AQG000010 | DEFENDANT AQG000012 | Letter dated March 11, 2013, from Cynthia Almond to undersigned counsel. | |
| 008 | DRFP 0008 | DRFP 0009 | KD Kim's 2010 Performance Review | Objection: Relevance FRE 402, 403 |
| 009 | DRFP 0051 | DRFP 0051 | Email dated July 2, 2012 from KD Kim to Rehau Complainant of Rehau's performance | |
| 010 | DRFP 0046 | DRFP 0046 | Email dated May 31, 2012, from KD Kim to Rehau giving Rehau "last | |

| | | | | |
|---|---|---|---|---|
| | | | warning". | |
| 011 | DRFP 0048 | DRFP 0049 | Email dated May 31, 2012, from Rehau to Mobis regarding communication issues | |
| 012 | DRFP 0057 | DRFP 0057 | Email dated August 28, 2012, from Rehau to Mr. Kim admitting that problem is "too many groups are handling the products.") | |
| 013 | DRFP 0014 | DRFP 0014 | KD Kim's Letter of Resignation dated September 19, 2012 | Objection: Relevance FRE 402, 403 |
| 014 | | | Affidavit Kelley Rodas | |
| 015 | | | Affidavit of Stephen Whetstone | |
| 016 | | | Affidavit of Brent Schwartz | |
| 017 | Rodas 0056 | Rodas 0056 | Excuse Slip | |
| 018 | Rodas 0004 | Rodas 0016 | Pay Stubs for Kelley Rodas | |
| 019 | Rodas 0001 | Rodas 0001 | Letter (undated) from Whetstone to Kelley Rodas | |

| | | | | |
|---|---|---|---|---|
| | | | regarding her FMLA leave starting 7/20/12 | |
| 020 | Rodas 0002 | Rodas 0002 | Letter (undated) from Whetstone to Kelley Rodas stating that Kelley Rodas' last day of work is 7/19/12 to be provided to DOL. | |
| 021 | Rodas 0003 | Rodas 0003 | Letter (undated) from Whetstone to Kelley Rodas to be submitted re: lack of work | |
| 022 | Rodas  0022 | Rodas 0025 | EEOC Intake Questionnaire for Kelley Rodas | |
| 023 | Lopez 005 | Lopez 0010 | EEOC Intake Questionnaire for Samantha Lopez | |
| 024 | AQG000059 | AQG000060 | Email dated July 15, 2012 re: "Last Week's Meeting." | |
| 025 | DRFP0047 | DRFP0047 | Email re: QF SXL Sill Side | Objection: Relevance FRE 402, 403 |
| 026 | AQG000045 | AQG000045 | Email re: Angela Oneal | |
| 027 | AQG000046 | AQG000046 | Email re: Items | |

| 028 | AQG000054 | AQG000055 | Email re: blank 3-Panel | |
| 029 | EXPRESS 0045 | EXPRESS 0045 | Express Unemployment Separation Forms | |
| 030 | EXPRESS 00047 | EXPRESS 00047 | Express Unemployment Separation Forms | |
| 031 | AQG000008 | AQG000009 | Letter from Almond to EEOC re: Samantha Lopez EEOC Charge | |

## ATTACHMENT G-2
### (Defendants' Trial Exhibit List)

| | | |
|---|---|---|
| 1. | Letter to Jennifer L. Vanairsdale (EEOC Investigator) from Cynthia Lee Almond on October 3, 2012 regarding Kelley Rodas | AQG000001-000003 |
| 2. | Letter to Jennifer L. Vanairsdale from Cynthia Lee Almond on December 5, 2012 | AQG000004 |
| 3. | Statement of Curt Young dated November 13, 2012 | AQG000005 |
| 4. | Affidavit of Sharon Mack | AQG000006-000007 |
| 5. | Letter to Jennifer L. Vanairsdale from Cynthia Lee Almond on October 3, 2012 regarding Samantha Lopez | AQG000008-000009 |
| 6. | Letter to Sadiqa Banks by Cynthia Lee Almond on March 11, 2013 | AQG000010-000012 |
| 7. | Demand letter sent to Stephen Whetstone by Sadiqa Banks to on March 1, 2013 | AQG000013-000016 |
| 8. | EEOC Charge of Discrimination – Samantha Lopez | AQG000017-000020 |
| 9. | EEOC Charge of Discrimination – Kelley Rodas | AQG000021-000026 |
| 10. | Email sent to Stephen Whetstone by Hampton Confirmed on May 6, 2012 | AQG000034 |
| 11. | Email sent to Kelley Rodas by Stephen Whetstone on May 13, 2012 | AQG000035 |
| 12. | Email sent to Brent Schwartz by Stephen Whetstone on November 3, 2011 | AQG000036 |
| 13. | Email sent to Anthony D'Andrea and Robert Elliott by Peter Buccos on April 20, 2012 | AQG000037 |

| 14. | Email sent to Kelley Rodas by Stephen Whetstone on May 10, 2012 | AQG000038-000039 |
|-----|------------------------------------------------------------------|------------------|
| 15. | Email sent to Peter Buccos by Stephen Whetstone on November 3, 2011 | AQG000040-000041 |
| 16. | Email sent to Stephen Whetstone by Kelley Rodas on May 4, 2012 | AQG000042-000043 |
| 17. | Email sent to Brent Schwartz by Stephen Whetstone on November 9, 2011 | AQG000044 |
| 18. | Email sent to Brent Schwartz by Stephen Whetstone on November 9, 2011 | AQG000045 |
| 19. | Email sent to David Funderburk by Stephen Whetstone on November 3, 2011 | AQG000046 |
| 20. | Email sent to Brent Schwartz by Stephen Whetstone on March 23, 2012 | AQG000047 |
| 21. | Email sent to Stephen Whetstone by Annabelle Sturkie on April 19, 2012 | AQG000048 |
| 22. | Email sent to Cynthia Almond, Brent Schwartz, and Amanda Wildman by Stephen Whetstone on November 13, 2012 | AQG000049 |
| 23. | Email sent to Brent Schwartz by Stephen Whetstone on September 26, 2012 | AQG000050 |
| 24. | Email sent to Brent Schwartz by Stephen Whetstone on September 28, 2012 | AQG000051 |
| 25. | Email sent to KD Kim by Stephen Whetstone on July 10, 2012 | AQG000052 |
| 26. | Mobis and Glovis shift details and phone numbers | AQG000053 |
| 27. | Email sent to Kelley Rodas by Stephen Whetstone on July 11, 2012 | AQG000054-000055 |

| 28. | Email sent to Stephen Whetstone and Kelley Rodas by Brent Schwartz on July 12, 2012 | AQG000056 |
|---|---|---|
| 29. | Letter regarding Kelley Rodas' FMLA leave starting July 20, 2012, signature block belonging to Stephen Whetstone | AQG000057 |
| 30. | Email sent to Stephen Whetstone by Curt Young on July 14, 2012 | AQG000058 |
| 31. | Email sent to Brent Schwartz by Stephen Whetstone on July 15, 2012 | AQG000059-000060 |
| 32. | Email sent to Kelley Rodas and Stephen Whetstone by Brent Schwartz on July 17, 2012 | AQG000061 |
| 33. | Letter regarding Kelley Rodas being out of work due to lack of work, signature block belonging to Stephen Whetstone | AQG000062 |
| 34. | Email sent to KD Kim by Stephen Whetstone on September 7, 2012 | AQG000063 |
| 35. | Spreadsheet of employee hours | AQG000064-000067 |
| 36. | Spreadsheet of employee hours | AQG000071-000090 |
| 37. | Letter sent by to Jennifer L. Vanairsdale by Brent Schwartz regarding Kelley Rodas' EEOC Claim | AQG000091-000094 |
| 38. | Statement of Annabelle Sturkie | AQG000095 |
| 39. | Express Application of Samantha Lopez dated January 23, 2012 | EXPRESS_0001-0002 |
| 40. | Handbook Receipt Acknowledgment by Lopez dated January 30, 2012 | EXPRESS_0003 |
| 41. | Disclosure Authorization by Lopez dated January 30, 2012 | EXPRESS_0004 |

| 42. | Express work policies and attendance reporting procedures dated January 30, 2012 | EXPRESS_0005 |
| 43. | Workforce summary for Samantha Lopez dated November 12, 2013 | EXPRESS_0006 |
| 44. | Workforce Memos | EXPRESS_0007-0009 |
| 45. | Associate Work History – Samantha Lopez | EXPRESS_0010 |
| 46. | Associate Check History – Samantha Lopez | EXPRESS_0011-0012 |
| 47. | EEOC Notice of Charge of Discrimination – Samantha Lopez | EXPRESS_0013-0015 |
| 48. | Email sent to Russell C. Moen by Jennifer Vanairsdale on September 24, 2012 | EXPRESS_0016 |
| 49. | Email sent to Russell C. Moen by Donna L. Gosdin on September 24, 2012 | EXPRESS_0017 |
| 50. | Express Employment Professionals Handbook | EXPRESS_0018-0042 |
| 51. | Express Staffing Agreement signed by Brent Schwartz dated October 26, 2012 | EXPRESS_0043 |
| 52. | Letter sent by Krystle L. Miller on October 1, 2012 | EXPRESS_0044 |
| 53. | Unemployment Separation Form – Samantha H Lopez, Claim date 06/13/2012 | EXPRESS_0045 |
| 54. | Notice of Claim Filing and Request for Separation Information – Samantha Lopez, Mailed 06/13/2012 | EXPRESS_0046 |
| 55. | Unemployment Separation Form – Samantha H Lopez, Claim date 07/06/2012 | EXPRESS_0047 |
| 56. | Notice of Claim Filing and Request for Separation Information – Samantha Lopez, Mailed 08/14/2012 | EXPRESS_0048 |

| 57. | Notice of Claim Filing and Request for Separation Information – Samantha Lopez, Mailed 07/06/2012 | EXPRESS_0049 |
|-----|---|---|
| 58. | Georgia Department of Labor Claims Examiner's Determination – Samantha Lopez, Mail date 08/09/2012 | EXPRESS_0050 |
| 60. | Georgia Department of Labor Claims Examiner's Determination – Samantha Lopez, Mail date 08/09/2012 | EXPRESS_0051 |
| 61. | Letter from Amanda Moody to State Representative on August 23, 2012 regarding Samantha Lopez on | EXPRESS_0052 |
| 62. | Notice of Claim Filing and Request for Separation Information – Samantha Lopez, Mailed 10/09/2012 | EXPRESS_0053 |
| 63. | Georgia Department of Labor Claims Examiner's Determination – Samantha Lopez, Mail date 01/24/2013 | EXPRESS_0054 |
| 64. | Unemployment Separation Form – Samantha H Lopez, Claim date 10/09/2012 | EXPRESS_0055 |
| 65. | Notice of Claim Filing and Request for Separation Information – Samantha Lopez, Mailed 01/08/2013 | EXPRESS_0056 |
| 66. | Unemployment Separation Form – Samantha H Lopez, Claim date 01/08/2013 | EXPRESS_0057 |
| 67. | Notice of Claim Filing and Request for Separation Information – Samantha Lopez, Mailed 04/08/2013 | EXPRESS_0058 |
| 68. | Georgia Department of Labor Claims Examiner's Determination – Samantha Lopez, Mail date 04/19/2013 | EXPRESS_0059 |

| 69. | Unemployment Separation Form – Samantha H Lopez, Claim date 04/08/2013 | EXPRESS_0060 |
|---|---|---|
| 70. | Letter regarding Kelley Rodas' FMLA leave starting July 20, 2012, signature block belonging to Stephen Whetstone | 0001 |
| 71. | Letter regarding July 19, 2012 being Kelley Rodas' last day with AQG, signature block belonging to Stephen Whetstone | 0002 |
| 72. | Letter regarding Kelley Rodas being out of work from 7/20/2012 to the first week of September due to lack of work, signature block belonging to Stephen Whetstone | 0003 |
| 73. | Non-Negotiable Advice of Deposit – Kelly Rodas, Pay Period 08/15/2011 – 08/28/2011 | 0004 |
| 74. | Non-Negotiable Advice of Deposit – Kelly Rodas, Pay Period 08/29/2011 – 09/11/2011 | 0005 |
| 75. | Non-Negotiable Advice of Deposit – Kelly Rodas, Pay Period 09/12/2011 – 09/25/2011 | 0006 |
| 76. | Non-Negotiable Advice of Deposit – Kelly Rodas, Pay Period 10/17/2011 – 10/30/2011 | 0007 |
| 77. | Non-Negotiable Advice of Deposit – Kelly Rodas, Pay Period 10/31/2011 – 11/13/2011 | 0008 |
| 78. | Non-Negotiable Advice of Deposit – Kelly Rodas, Pay Period 12/26/2011 – 01/08/2012 | 0009 |
| 79. | Non-Negotiable Advice of Deposit – Kelly Rodas, Pay Period 01/09/2012 – 01/22/2012 | 0010 |
| 80. | Non-Negotiable Advice of Deposit – Kelly Rodas, Pay Period 01/22/2012 – 02/04/2012 | 0011 |
| 81. | Direct Deposit – Kelly Rodas, Pay Date 03/02/2012 | 0012 |

| 82. | Direct Deposit – Kelly Rodas, Pay Date 03/02/2012 | 0013 |
|---|---|---|
| 83. | Direct Deposit – Kelly Rodas, Pay Date 03/16/2012 | 0014 |
| 84. | Direct Deposit – Kelly Rodas, Pay Date 03/30/2012 | 0015 |
| 85. | Direct Deposit – Kelly Rodas, Pay Date 05/25/2012 | 0016 |
| 86. | EEOC Notice of Right to Sue – Kelly Rodas, Date Mailed: February 4, 2013 | 0017 |
| 87. | EEOC Notice of Charge of Discrimination – Kelly Rodas, Dated: September 19, 2012 | 0018 |
| 88. | EEOC Charge of Discrimination – Kelly Rodas, Dated: September 11, 2012 | 0019-0020 |
| 89. | Additional Information for Claimant Kelly Rodas, Date of Filed Charge: September 11, 2012 | 0021 |
| 90. | EEOC Intake Questionnaire – Kelly Rodas, September 11, 2012 | 0022-0025 |
| 91. | Letter of Representation from Sadiqa Banks, September 11, 2012 | 0026 |
| 92. | EEOC Notice of Right to Sue – Kelly Rodas, Date Mailed: February 4, 2013 | 0027 |
| 93. | Letter from Janet L. Shoenfelt to Jennifer L. Vanairsdale on September 25, 2012 regarding Kelly Rodas v. Kia Motors Manufacturing | 0028 |
| 94. | EEOC Notice of Charge of Discrimination – Kelly Rodas, Dated: September 19, 2012 | 0029 |
| 95. | EEOC Charge of Discrimination – Kelly Rodas, | 0030 |

|       | Dated: September 11, 2012                                                                                                | |
|-------|--------------------------------------------------------------------------------------------------------------------------|-----------|
| 96.   | EEO-1 200 Establishment Report                                                                                           | 0031-0033 |
| 97.   | EEOC Notice of Right to Sue – Kelly Rodas                                                                                | 0039      |
| 98.   | EEOC Notice of Charge of Discrimination – Kelly Rodas, Dated: September 19, 2012                                          | 0040      |
| 99.   | EEOC Charge of Discrimination – Kelly Rodas, Dated: September 11, 2012                                                    | 0041      |
| 100.  | EEOC Notice of Right to Sue – Kelly Rodas, Date Mailed: February 4, 2013                                                  | 0047      |
| 101.  | EEOC Notice of Charge of Discrimination – Kelly Rodas, Dated: September 19, 2012                                          | 0048      |
| 102.  | EEOC Charge of Discrimination – Kelly Rodas, Dated: September 11, 2012                                                    | 0049      |
| 103.  | 2/5/08 Draft Supplemental Questionnaire – Kelly Rodas                                                                     | 0055      |
| 104.  | Excuse Slip for Kelly Rodas by Dr. Brett Bowie, Dated: 6/14/2012                                                          | 0056      |
| 105.  | Kelly Rodas' Driver's License                                                                                            | 0057      |
| 106.  | Employee's Withholding Exemption Certificate – Kelly Rodas, 12/13/2011                                                   | 0058      |
| 107.  | Form W-4 Employee's Withholding Allowance Certificate, Kelly Rodas, 12/13/2011                                          | 0059      |
| 108.  | Form I-9, Employment Eligibility Verification – Kelly Rodas                                                               | 0060      |
| 109.  | Form W-11 Hiring Incentives to Restore Employment (HIRE) Act Employee Affidavit – Kelley C. Rodas, 12/13/2011             | 0061      |

| 110. | Telephone records from May 17, 2012 to June 16, 2012 to for AQG telephone numbers: 205-246-1940; 205-292-5640; 205-393-9898; 205-394-9213; 205-535-4187. | |
| 111. | Telephone records from June 17, 2012 to July 16, 2012 to for AQG telephone numbers: 205-246-1940; 205-292-5640; 205-393-9898; 205-394-9213; 205-535-4187. | |
| 112. | Telephone records from July 17, 2012 to August 16, 2012 to for AQG telephone numbers: 205-246-1940; 205-292-5640; 205-393-9898; 205-394-9213; 205-535-4187. | |
| 113. | Telephone records from August 17, 2012 to September 16, 2012 to for AQG telephone numbers: 205-246-1940; 205-292-5640; 205-393-9898; 205-394-9213; 205-535-4187. | |
| 114. | Deposition of Kelley Rodas taken on January 9, 2014 (to be used for impeachment purposes) | |
| 115. | Deposition of Samantha Lopez taken on January 10, 2014 (to be used for impeachment purposes) | |

## ATTACHMENT G-3
## PLAINTIFF'S OBJECTIONS TO DEFENDANT'S EXHIBIT LIST OF DOCUMENTARY AND PHYSICAL EVIDENCE

Plaintiff objects to each and every Exhibit identified by Defendant to the extent they contain inadmissible hearsay or for which an appropriate evidentiary foundation may not exist. Plaintiff reserves the right to assert relevance and materiality objections, as well as any other proper objections, at the time of trial depending upon the circumstances surrounding the attempted use of any exhibit. Plaintiff reserves the right to further object to all Exhibits identified by Defendants in this manner prior to and at trial.

Plaintiff specifically objects to the following Exhibits for the reasons stated:

| Exhibit No. | Objection(s) |
|---|---|
| 4 | Plaintiff objects on the ground that this document is irrelevant, and fails to adhere to the correct requirements for this Court to be considered a valid affidavit. (FRE 401) |
| 38 | Plaintiff objects on the ground that this document is irrelevant, and fails to adhere to the correct requirements for this Court to be considered a valid affidavit. (FRE 401) |
| 49 | Plaintiff objects on the grounds that the defendants have failed to produce this document at any time previously to its inclusion in the pretrial order. To this extent, the plaintiff is not capable of making the appropriate objection, if any. |
| 110 | Plaintiff objects on the grounds of authenticity, that this document lacks foundation and is inadmissible as a business record. (FRE 401, 602) |
| 111 | Plaintiff objects on the grounds of authenticity, that this document lacks foundation and is inadmissible as a business record. (FRE 401, |

| | |
|---|---|
| | 602) |
| 112 | Plaintiff objects on the grounds of authenticity, that this document lacks foundation and is inadmissible as a business record. (FRE 401, 602) |
| 113 | Plaintiff objects on the grounds of authenticity, that this document lacks foundation and is inadmissible as a business record. (FRE 401, 602) |

**ATTACHMENT I-1**

**PLAINTIFF'S PROPOSED VERDICT FORM**

**Do you find from a preponderance of the evidence:**

**Part One: Placement on unpaid leave- Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA")**

1.  That Kelley Rodas  is a member of a group protected by Title VII?

Answer Yes or No _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

2. That Assurance Quality Group's involuntary placement of Kelley Rodas and removal from the workplace was because she was pregnant?

Answer Yes or No _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

**Part Two: Pregnancy Discrimination-Termination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA")**

1.  That Kelley Rodas  is a member of a group protected by Title VII?

Answer Yes or No _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

2. That Assurance Quality Group, Inc. discharged Kelley Rodas because of her protected activity under the Pregnancy Discrimination Act?

Answer Yes or No _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

**Part Three**: **Damages Against Assurance Quality Group**

**Do you find from a preponderance of the evidence:**

1. That Kelley Rodas suffered damages because of her discharge from Assurance Quality Group, Inc.'s employment?

Answer Yes or No _____

If your answer is "No," this ends your deliberations in this case, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

2. That Kelley Rodas should be awarded damages to compensate her for net loss of wages and benefits to the date of your verdict?

Answer Yes or No _____

If your answer is "Yes," in what amount? $_____

Go to the next question.

3. That Kelley Rodas should be awarded damages to compensate her for:

Emotional pain $ _____
Suffering $ _____
Inconvenience $ _____
Mental Anguish $ _____
Loss of Enjoyment of Life $ _____
Loss of Reputation $ _____

If your answer is "No," this ends your deliberations on Question 3, so go to Question 4.

4. That Assurance Quality Group, Inc. acted with malice or with reckless indifference to Kelley Rodas' federally protected rights and that punitive damages should be assessed against Assurance Quality Group?
Answer Yes or No _____

If your answer is "Yes," in what amount? $_____

SO SAY WE ALL.

_____
Foreperson

DATED: _____

## <u>ATTACHMENT I-2</u>
## (Defendants' Proposed Jury Verdict Form)

1.  On Plaintiff's claim of gender discrimination in violation of Title VII, we the jury find in favor of (mark one box):

    _____ The Plaintiff; or

    _____ The Defendant.

    If you found in favor of the Plaintiff on any of her claims, you may award such damages below as you believe are authorized by the evidence against the Defendant.  If you found in favor of the Defendant on all of Plaintiff's claims, you should stop here and return your verdict to the Court.

2.  We, the jury, award to Plaintiff the following monetary damages:

    $_____.

3.  We, the jury, award Plaintiff the following compensatory damages for inconvenience and/or other non-pecuniary losses:

    $_____.

4.  We, the jury, find Plaintiff is entitled to attorneys' fees and costs (mark one box):

    _____ Yes; or

    _____ No.

5.  We, the jury, find Defendant are entitled to attorneys' fees and costs (mark one box):

    _____ Yes; or

    _____ No.

**SO SAY WE ALL.**

_____

**Foreperson's Signature**

**DATE: _____**